THE BREMEN SAVING BANK, *Appellant,* v. THE BRANCH-CROOKES SAW COMPANY.

DIVISION TWO.

104 425
57a 120

104 425
139 332

104 425
o158 361

1. **Note:** ASSUMPTION OF DEBT: ESTOPPEL. The defendant corporation was sued on a note purporting to be signed by it as maker and one B. as indorser. It defended in its answer on the grounds that it was a manufacturing and business corporation; that its name was used by B. the then president of the corporation, for his own accommodation, and for the purpose of satisfying his prior individual debt; that the note was so executed without any consideration moving to the defendant; and that the plaintiff, when it accepted the note, had knowledge of the foregoing facts. *Held* that if the plaintiff, was induced by defendant's conduct under the circumstances to believe in good faith that the defendant had assumed to pay the debt, though it did not, in fact, assume to pay it, defendant was liable.

2. —— : —— : —— : PLEADING. Such liability, although resting on estoppel, could be shown under a replication in the form of a general denial to the answer.

3. —— : BUSINESS UNDER FIRM-NAME: PREFERENCE. Where one does business under a firm-name, he owning all the property, the debts are individual ones, and no preference exists among his creditors.

4.    ―――― : ――――.    Where one doing business in his individual name
and also under a firm-name borrows money on the credit of both,
and afterwards organizes a corporation and transfers all his assets
to it, the inference is strong that the corporation assumed the
debt.

5.    **Partnership, Payment of Salary Does not Constitute.**
Where a person enters into a contract with another by which the
latter is to receive as his salary a certain sum of money and
five per cent. of the profits of the business, while the former is to
own the entire capital stock, no partnership is created.

*Appeal from St. Louis City Circuit Court.*—HON.
DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Lubke & Muench* for appellant.

(1) Under the agreement read in evidence, Schulte
and Fosburg were not partners in the firm of Branch,
Crookes & Co. in any sense of the term. *Clifton v.
Howard*, 89 Mo. 192 ; *Ashby v. Shaw*, 82 Mo. 76.  (2)
Even if the interest of Schulte and Fosburg in the net
profits be considered as constituting them partners, the
bank, as *bona fide* holders for value before maturity,
had a perfect title to the note, and it was, as to them,
a valid and binding indebtedness of Branch, Crookes &
Co. *Edwards v. Thomas*, 66 Mo. 468, and cas. cit.; *John-
son v. McMurry*, 72 Mo. 282 ; *Bank v. Tinsley*, 11 Mo.
App. 502. (3)   Being then a valid debt of the con-
cern of Branch, Crookes & Co., this note became like-
wise a valid debt against the new corporation, and a
charge against all the assets swept into its coffers,
whether such obligation be predicated upon the general
"understanding" had between the contracting parties
at the time, or arising by implication of law.    *Wil-
liams v. Colby*, 24 N. Y. 793 ; *Slattery v. Trans. Co.*, 91
Mo. 217 ; *Dean v. Lead Co.*, 59 Mo. 523 ; *Thompson v.
Abbott*, 61 Mo. 176 ; *Ins. Co. v. Trans. Co.*, 13 Mo. 516 ;
*Brum v. Ins. Co.*, 16 Fed. Rep. 140 ; *Mt. Pleasant v.*

*Beckwith*, 100 U. S. 514; *Railroad v. Boney*, 3 Law. Rep. 435, and note. (4) Independent of the conclusion contended for in the preceding point, the appellant would have the right to hold the respondent upon the note in suit, because it received the same in good faith, in exchange for a previous note held by it, of which the respondent had ample notice, and from an authorized officer. *Banking Ass'n v. N. Y., etc., Co.*, 35 N. Y. 505; *Bank v. G. A.*, 116 N. Y. 292; *Bank v. Young*, 7 Atl. Rep. 488; *Holmes v. Willard*, 24 N. Y. 260; *Bank v. Mfg. Co.*, 18 N. Y. 954; *Supervisors v. Schenck*, 5 Wall. 784; *Bank v. Stoneware Co.*, 2 Mo. App. 298; Daniels' Neg. Inst. [3 Ed.] sec. 386, p. 361. (5) The plea of *ultra vires* is not open to the defendant. The state alone can urge this point, in a direct proceeding, "except when the charter of the corporation not only specifies, and, therefore, limits it to, the business in which it may engage, but by express terms, or by a fair implication from its terms, invalidates transactions outside of its legitimate corporate business." *Drug Co. v. Robinson*, 81 Mo. 26, and cases cited; *Thornton v. Bank*, 71 Mo. 221; *Ins. Co. v. Hauck*, 71 Mo. 465; *Bank v. Hunt*, 76 Mo. 439; *Hovelman v. Railroad*, 79 Mo. 632; *Baker v. Loan Co.*, 36 Minn. 185; *Bank v. Matthews*, 98 U. S. 621; *Bank v. Whitney*, 103 U. S. 99.

*S. N. Holliday* and *Boyle, Adams & McKeighan* for respondent.

(1) The defendant corporation unites with plaintiff bank in its first self-evident proposition, namely: Branch cannot be an accommodation indorser for himself; as the corporation never claimed and does not now claim any advantage from a supposed denial of such proposition, the bank's declaration of law, numbered 4, declaring that a man can be an accommodation indorser for himself, was unwarranted and uncalled for, and

properly refused. (2) "Branch, Crookes & Co." being only the trade-name of Joseph W. Branch, prior to the formation of the defendant corporation, and such fact being known by plaintiff bank, no liability of any kind can be asserted against the trade-name, as distinguished from the person, and no relief can be awarded the plaintiff bank on the fiction involved therein. (3) This being an action at law strictly and no facts being stated in the pleadings on which equitable relief can be predicated, the court below did not err in refusing to give the bank's declaration of law, numbered 2, seeking to charge the defendant corporation with the payment of the note in suit, by reason of the simple fact that the assets of that part of Joseph W. Branch's business conducted by him under the trade-name of "Branch, Crookes & Co." were transferred to the corporation. Plaintiff cannot sue on one cause of action and recover on another. *Stix v. Matthews*, 75 Mo. 96 ; *Field v. Railroad*, 76 Mo. 614 ; *Cape Girardeau, etc., v. Kimmel*, 58 Mo. 83 ; *Clements v. Yates*, 69 Mo. 623. (4) Even if the pleadings warranted any such equitable relief the facts in the case, as disclosed by uncontradicted testimony, would not subject the defendant corporation to the payment of the note in controversy, because Joseph W. Branch, at the time of the transfer of the property to the defendant corporation, being then a man of large means, did not transfer to the defendant corporation all of his property, but only such as he had been employing in connection with the business carried on by him under the trade-name of "Branch, Crookes & Co." For these reasons also declaration of law, numbered 2, was properly refused. (5) Facts relied upon as an estoppel *in pais* must be specially pleaded. *Bray v. Marshall*, 75 Mo. 327 ; *Noble v. Blount*, 77 Mo. 235 ; *Hammerslough v. Cheatham*, 84 Mo. 21. (6) There is no ground for the doctrine of estoppel, as against the defendant corporation, in this case, because the plaintiff bank knew, when it prevailed upon Joseph W. Branch to sign the name

of his corporation to this note, that the note represented the individual indebtedness of Joseph W. Branch, only, and the bank never surrendered or lost anything, by reason of its acceptance of the signature of the defendant corporation, and, if it did, it was not by reason of the act of the corporation, inasmuch as the corporation never acted by authority and the bank must be held to know it. Accordingly declaration of law, numbered 3, was properly refused. (7) The facts of this case entitle this defendant to raise, by answer, the defenses which it has made. Point 5 of plaintiff's counsel's brief is a misconception of the application of the doctrine of *ultra vires*. (8) The executive officer of a corporation has no power or authority to sign the name of his corporation to a bill or note for his own accommodation. Such note, if so signed, by the executive officer, is without consideration and void, when held by a party who knew at the time of receiving it, that it was the individual debt of the officer so using the name of his corporation; accordingly, the declaration of law given for defendant corporation was properly given. *Bank v. Knitting & Corset Co.*, 68 Mich. 620; *Bank v. Young*, 41 N. J. Eq. 531; *Webster v. Machine Co.*, 54 Conn. 394; *Bank v. Pottery Co.*, 34 Vt. 144; *Smead v. Railroad*, 11 Ind. 104; *Bank v. Bank*, 13 N. Y. 309; *Bank v. Stone-Dressing Co.*, 26 Barb. 23; *Bank v. Stone-Dressing Co.*, 30 Barb. 421; *Bank v. Stone-Dressing Co.*, 5 Bosw. 275; *Georgia Co. v. Castleberry*, 43 Ga. 187; Wood's Field on Law of Corporations, sec. 241.

THOMAS, J.—This is a suit at law on a promissory note, dated October 10, 1887, signed by the Branch-Crookes Saw Company as maker, and Joseph W. Branch as indorser, for $6,500.

The corporation defends the suit on the ground that it is a business corporation, organized under the provision of our statute relating to manufacturing and

business companies; that its name was employed by Joseph W. Branch, the then president of the corporation, in signing said note for his own accommodation; that it was so signed by him for the purpose of paying or satisfying an individual, antecedent obligation of his own, and that the same was done by him without any consideration moving to the corporation therefor and that the bank knew, when it accepted the signature of the corporation, the foregoing facts to be true. Such, in substance, is the corporation's answer. To this answer, the bank filed a general denial only. Joseph W. Branch, the other defendant, suffered default.

The facts in the case are substantially as follows:

In 1876, Joseph W. Branch entered into an agreement with two persons, named Schulte and Fosburg, for the purpose of carrying on the business of manufacturing saws. The substance of this agreement is as follows: Branch was always to own the entire capital, Schulte and Fosburg were to receive a certain sum of money and five per cent. of the profits, as their salary. Fosburg and Schulte were only in the employ of Joseph W. Branch, who owned the entire assets of the concern, and who adopted the name of Branch, Crookes & Co., as his trade-name, for the purpose of carrying on the particular business contemplated by this arrangement. Mr. Branch, at that time, and for a long time thereafter, was largely interested in many other kinds of business.

In 1880, while the arrangement aforesaid was in existence, Mr. Branch borrowed $8,000 of the bank, and gave his own note therefor, signed by himself, individually, as maker, and by his trade-name of Branch, Crookes & Co., as indorser. The proceeds of this first note were used by Mr. Branch in other business than that conducted by him in the name of Branch, Crookes & Co.

Neither Schulte nor Fosburg ever had any knowledge of the note, or the indebtedness represented by it,

until some time after the corporation was formed.   The officers of the bank say that they believed at that time that Branch owned the entire business of Branch, Crookes & Co., and that he alone was doing business under that name;   that both names were used on the note, because of a rule of their bank, that all discounted paper must have two names upon it.  This indebtedness ran along, being renewed every three months, by giving a new note, from November 15, 1880, until October 1, 1886.   During these years the note was renewed in all cases with Joseph W. Branch and his other name, Branch, Crookes & Co., either maker or indorser, and no other names were on the paper.

In July, 1886, the corporation, "Branch-Crookes Saw Company," was organized under and pursuant to the laws of the state of Missouri governing manufacturing and business companies.   The capital of the corporation was fifteen hundred shares of the par value of $100 each.   Schulte subscribed for, and took, one hundred shares; Fosburg, fifty shares; J. C. Branch, fifty shares; Medairy, one share, and Joseph W. Branch, the remainder.

When the corporation was formed it took a transfer to itself of that part of the property of Joseph W. Branch which, before that time, he had owned in connection with the business carried on by him under the trade-name of Branch, Crookes & Co., and the corporation issued its stock in consideration of that transfer. There was no agreement made at the time requiring the corporation to pay the debts of Mr. Branch, or even those obligations of his outstanding, in connection with the business of Branch, Crookes & Co.

The following is the paper which represented the idea of the parties at that time, that is to say:

"In consideration of the issuance to me of fifteen hundred shares of the capital stock of the Branch-Crookes Saw Company, full paid, I hereby sell, assign and transfer to said company $150,000 of the assets and

property of Branch, Crookes & Co., whereof I am sole owner. The particular assets hereby assigned appear on the books of said Branch, Crookes & Co., and of said Branch-Crookes Saw Company

"In witness whereof I have hereunto set my hand and seal this tenth day of July, 1886.

"[Signed.]          JOSEPH W. BRANCH."

On the first day of October, 1886, the old note had to be paid or again renewed. It had at that time been reduced to $7,000. Joseph W. Branch renewed the note on that day by signing his own name as maker and the Branch-Crookes Saw Company as indorser. The note was again renewed in the same way on the third day of January, 1887, and on the sixth day of April following. When the note became due in July, Joseph W. Branch was financially embarrassed. He had been president of the defendant corporation all the time and continued to be such up to the time of the trial of this case in the circuit court.

His son, Joseph C. Branch, was vice-president and R. L. Fosburg was treasurer and secretary. Fosburg, however, retired from the concern in June, 1887, both as stockholder and officer, and was succeeded in the offices of treasurer and secretary by Joseph C. Branch. So that on July 8, 1887, when the note renewed April 6, 1887, became due, Joseph W. Branch was president, Joseph C. Branch, vice-president, treasurer and secretary, and Medairy a director and bookkeeper of this corporation. A meeting of the board of directors of the plaintiff bank was held a short time before this note became due, and Joseph W. Branch was called and appeared before it. The bank held his obligations on accounts other than the note in controversy. He said to the board, he could not pay the other notes, and added, "I cannot pay anything, but that note is good because that company is good. It has no other debts than this note, and it ought to be paid."

On the eighth day of July, 1887, the note was duly protested for non-payment, and notice of non-payment served on Medairy at the company's office in St. Louis. Mr. Joseph W. Branch went to the director's room of the bank and Prauge, the president, and Nacke, the vice-president, said to him, "The note ought to be paid by the company," to which Mr. Branch replied, "Yes, it ought, or at least renewed." Mr. Prauge said that if it was renewed he would like to have the corporation become maker, because Branch and Crookes originally got credit for it. Mr. Branch at first objected to this, but finally consented, saying, "Any way you please; any way you please." Branch drew a check in the name of defendant corporation for $500 as a payment on the note, and then executed a note for $6,500, payable ninety days after date, signing the name of defendant as maker and his own name as indorser. The bank delivered to Branch the old note. The note fell due October 10, 1887, and was again renewed by Joseph W. Branch in the same way for ninety days, and the old note was delivered to Branch. This note dated October 10, 1887, is the one now in controversy. On October 10, 1887, Joseph W. Branch made a general assignment for the benefit of his creditors.

At the instance of defendant company and against the objection and exception of plaintiff, the court granted the following instruction: "If the court, sitting as a jury, finds the facts to be that on November 15, 1880, Joseph W. Branch presented his note to the plaintiff for $8,000, made by him and indorsed by Branch, Crookes & Co., composed either of himself exclusively, or of himself and one Fosburg and Schulte, and that the plaintiff received said note and paid the money therefor less the discount, either to Mr. Joseph W. Branch, or Branch, Crookes & Co., and if the debt represented by this note was from time to time renewed with substantially the same maker and indorser until

the year, 1886, and if on October 1 of that year, after the defendant had become incorporated, Mr. Joseph W. Branch, upon the maturity of the last preceding renewal of said note, gave a new note with his own name as maker, and that of the defendant corporation as indorser, and if the note so given on October 1, 1886, was again renewed January 3, 1887, with like maker and indorser; and on April 6, 1887, with like maker and indorser, and on July 8, 1887, at the request of plaintiff, renewed by placing the corporation's name as maker on this note and Joseph W. Branch's name as indorser; and if on October 10, 1887, a further renewal note, being the one in suit, was given for the same debt or part of it, with the name of the Branch-Crookes Saw Company, defendant corporation, as maker and Joseph W. Branch as indorser; and if the court further finds that when this last note was so given to the plaintiff, and when the first note of date, October 1, 1886, indorsed by Branch-Crookes Saw Company, was first given to the plaintiff, the plaintiff knew that the note and notes bearing the name of defendant corporation were given to it, by way of a renewal of the note so originally given in 1880, and so subsequently renewed as hereinbefore stated, then the plaintiff cannot recover in this action, unless the court further finds as a fact that at the time of the formation of the defendant corporation and the sale of the assets of Branch, Crookes & Co. to it, that the defendant thereby agreed to assume and to pay this, the said debt so due to plaintiff or did agree to pay liabilities of said Branch, Crookes & Co., among which this said debt due plaintiff was included, as a part of the consideration for its purchase of the assets of said Branch, Crookes & Co., and the burden is upon the plaintiff to prove that the corporation defendant did for the consideration aforesaid assume the payment of said particular debt."

At the instance of plaintiff, the court granted the following instruction or declaration of law: "1. The court, sitting as a jury, declares the law to be that, if it

appear from the evidence that, at the time when the assets and property of Branch, Crookes & Co. were transferred to the defendant saw company, it was agreed between said defendant and Joseph W. Branch, the then owner of said assets and property, as part consideration for such transfer, that defendant saw company should assume and pay all liabilities that said Branch might then owe under the name of Branch, Crookes & Co., and that thereafter, in pursuance of such agreement, said Branch affixed the name of said saw company to the note in suit, and to the note or notes of which the same is a renewal, then the defendant saw company is liable in this action, and the judgment should be for the plaintiff in the amount of note sued on, with interest from its maturity at the rate of eight per cent. per annum."

And plaintiff also asked the court to grant the following instructions, or declarations of law, which the court refused, plaintiff excepting: "2. The court, sitting as a jury, further declares the law to be, that if it appear from the evidence that, after the incorporation of the defendant saw company, it entered into contract with defendant Branch to purchase and assume from him all the assets and property theretofore owned and used by said Branch, in the business of manufacturing saws, under the business name of Branch, Crookes & Co., and under such contract received, assumed and used all such assets and property, then the law holds said saw company liable for any and all indebtedness that said Branch had theretofore legally incurred in such name of Branch, Crookes & Co., whether the defendant company at the time of the transfer was informed of such indebtedness or not.

"3. The court, sitting as a jury, further declares the law to be, that, if it appear from the evidence that, when the defendant saw company's name was first indorsed upon the series of notes shown in evidence, plaintiff in good faith believed that such note was

either for an indebtedness, legally owing or assumed by
defendant saw company, or that defendant Branch was
duly authorized to affix the name of the saw company
thereto, and did in good faith, and without notice of the
want of authority of said Branch, if any, or of the fact
that such debt had not been legally assumed by defend-
ant company (if such be found to be the fact) accept
said note, and in consideration thereof deliver up for
cancellation the note then previously held by it, and
that the subsequent notes, including the note sued on,
were executed by defendants and accepted by plaintiff
under like circumstances, in like good faith, without
notice, and upon the delivery up of previous notes, then
the finding must be for plaintiff.

"4. The court further declares the law to be, that
the agreement between Branch, Fosburg and Schulte,
read in evidence, did not constitute said persons part-
ners in law, and that under said agreement the defend-
ant Branch was not restricted from using the name of
Branch, Crookes & Co., for accommodation indorse-
ments."

Judgment was rendered against Branch for the
amount of the note in favor of the Branch-Crookes Saw
Company, and plaintiff appeals.

I. The instructions given and refused indicate very
clearly the theory upon which the trial court determined
this controversy. The instructions given base plain-
tiff's right of recovery solely on the ground that the
defendant corporation in fact assumed to pay this debt
as a part of the consideration of the purchase of the assets
of Branch, Crookes & Co. This was error. Plaintiff
is entitled to recover upon another hypothesis pre-
sented by the evidence. If it was induced by the con-
duct of the officers and stockholders of defendant and
by the facts connected with the history of the note, prior
to October, 1886, to believe, and it did in good faith
believe, that the defendant had in *any* way and for *any*
consideration assumed to pay the debt, and was liable

for it, and, so believing, it took the notes of July 8, and October 10, 1887, in each case unconditionally extending the time of payment for ninety days, and delivering up the old notes, then it was a *bone fide* holder for value of the note in suit, and it ought to recover, notwithstanding the fact that defendant did not in form or in fact assume the debt. *Deere v. Marsden*, 88 Mo. 512; *Crawford v. Spencer*, 92 Mo. 498; *Fitzgerald v. Barker*, 96 Mo. 661; *Mech. Banking Ass'n v. N. Y., etc., W. L. Co.*, 35 N. Y. 505; *National Park Bank v. G. A., etc.*, 116 N. Y. 292; *National Bank of Republic v. Young*, 7 Atl. Rep. 488; *Holmes v. Willard*, 24 N. Y. 260; *Second National Bank v. Mfg. Co.*, 18 N. Y. 954; *Supervisors v. Schenck*, 5 Wall. 784; *La Fayette Savings Bank v. Stoneware Co.*, 2 Mo. App. 299; Daniels' Neg. Inst. [3 Ed.] sec. 386, p. 361.

We do not regard the authorities cited by respondent as in conflict with the doctrine stated above. In all of them the parties taking the notes knew they were accommodation notes. If the bank in this case knew that the debt was the sole debt of Branch, it cannot recover. It may be conceded that it knew the original debt was Branch's alone; but upon the evidence in this record there are clearly two sides to the question, whether it had good cause to believe, and did in good faith believe, that defendant had assumed to pay the debt. On the one hand it knew that Joseph W. Branch and Branch, Crookes & Co. were the same person, and hence that the debt was created for the former. When the note was renewed three times after the organization of defendant, it took it with Branch as maker and the defendant as indorser, and when the form of the note was changed in July, 1887, it insisted on defendant becoming the maker instead of indorser. Branch objected to this, at first, but finally yielded. On the other hand the bank officers did not know that Branch used the money in his business outside of the saw business.

Defendant's counsel assume that it was proved beyond controversy, that they did know this, but in this they are mistaken. These officers all testify that they did not know what Branch did with the money. It is true J. C. Gerichten, the cashier and teller, testifies that after the proceeds check of the note was returned to his bank he might have inferred that Branch used the money for his private purpose, simply because his name appeared as the last indorser, but he himself adds that he did not know how Branch disposed of the money. Branch carried on business in a dual capacity. The saw business involved his most important interests, and this was carried on in the name of Branch, Crookes & Co. In 1886, when the corporation was organized, Joseph W. Branch retained twelve hundred and ninety-nine shares of the stock out of a total of fifteen hundred. This represented $129,900, while the other shares represented only $20,100. Of this last sum his son, Joseph C. Branch, owned fifty shares worth $5,000. Fosburg who owned $5,000 of the stock sold out in June, 1887, but the evidence does not disclose the name of the party to whom he sold. Joseph W. Branch was president of the corporation, his son, Joseph C., was vice-president up to June, 1887, and he then became treasurer and secretary also. In July, 1887, when the note was put in the form it finally assumed, Branch informed the board of directors of the bank, that this was the only debt the corporation owed, and that it was good, because the corporation was good. Branch owed other sums to the bank, but there was no pretense, either by the bank or Branch, that the corporation was liable for any of these, thus clearly implying that all parties recognized the *status* of the debt in controversy as being different from the other obligations of Branch.

The note was protested July 8, 1887, and when Branch went to the bank to arrange about it the officers had a right to presume that the corporation had notice of the protest and that Branch had authority to act in

the premises.    Indeed, the notice of the protest was
served on Medairy, a director, and the bookkeeper of the
concern.    No action was taken by the corporation, and
the matter was allowed to run on in this way till the
note was renewed in October and the final crash came,
and Branch went under financially.    Branch constituted
the firm of Branch, Crookes & Co., and when all the
assets belonging to Branch under the trade-name were
transferred to the corporation, the bank officers no
doubt believed that Branch was virtually the corpora-
tion as he had been Branch, Crookes & Co.    Indeed,
that was true.    Fosburg says, the directors never called
Branch to account, nor even asked him what he was
doing.    If the bank officers had desired to get the real
facts in connection with this debt in its relation to
defendant, they would have gone of course to Branch,
its president and the owner of nearly all its stock.    It
was peculiarly within his knowledge whether this was a
debt of the corporation or not.    He told the board of
directors this was a debt of the corporation.    The son,
Joseph C. Branch, said he knew this note was given, and
it ought to be paid ; that the company was not fighting
it, but payment was resisted by some of the bondsmen
of the elder Branch who held the latter's stock to secure
them.

If it be a fact that the corporation never assumed
this debt, and, for that reason, ought not to pay it, it is
manifest that somebody must be the loser, and "it is
more reasonable that he that employs and puts con-
fidence in a deceiver should be a loser rather than a
stranger."    *Edwards v. Thomas*, 66 Mo. 468.    We do
not desire to be understood as holding that the good
faith of the bank in this transaction is proved, but we
refer to these salient points for the sole purpose of
showing that there is substantive evidence tending to
prove it, and this issue ought to be squarely submitted
to the triers of the fact by an appropriate instruction.
Instruction, numbered 3, prayed by the plaintiff and

refused by the court, modified to conform to the views expressed herein, ought to be given on another trial of the case.

II.   It is contended by defendant that instruction, numbered 3, above quoted, sets up facts which must operate by way of estoppel *in pais* alone, and as the plaintiff had not pleaded an estoppel, no issue of that character was raised and for that reason this instruction ought to have been refused.   We do not concur in this view.   The answer admits that the defendant corporation executed the note in suit and undertakes to avoid its payment by avering that the debt evidenced by the note was the debt of Branch ; that the note was taken for the accommodation of Branch ; that Branch had no authority to sign the name of the corporation, and that the note was without consideration moving from the bank, all of which was known to the bank.   To this answer plaintiff filed a general denial.   Under this state of the pleading it was competent for plaintiff to prove its good faith in taking the note, and that it had reason to believe, and did believe, that defendant had assumed the debt and was liable for it.   In fact this issue grows out of the history of the transaction as proven by defendant and plaintiff unquestionably has the right to complete the history, only partially given by defendant.

III.   Instruction, numbered 2, as prayed by plaintiff, does not declare the law as applicable to the facts of this case.   The debts created by Branch for the business carried on under the name of Branch, Crookes & Co. and his other debts stand upon the same footing in relation to all his property.   A firm creditor has a preference over a separate creditor in the distribution of the partnership property.   But this is predicated solely on the fact that there is joint property.   Where there is no joint property, there is, of course, nothing on which the rule can operate.   Here the property all belonged to Branch, individually, and, in such case,

all debts are the debts of Branch, and no one can be preferred over another. *Miller & Co. v. Creditors*, 37 La. Ann. 604; *Scull's Appeal*, 7 Atl. Rep. (Pa.) 588; 1 Bates on Part., sec. 106.

While this is the legal effect of this transaction, the fact that Branch carried on business in his own name and also in the name of Branch, Crookes & Co., and borrowed money originally on the credit of both names, and that afterwards all the assets of that part of his business carried on under the name of Branch, Crookes & Co. were bodily "swept" into the corporation, the only change made being the substitution of the word "saw" for "and" in the firm-name, is an important factor in the trial of the issue of the good faith of the bank in taking the note in controversy. The inference that this debt of Branch, Crookes & Co. was carried with the assets, into the corporation, would be very strong.

IV. We do not know upon what theory instruction, numbered 4, prayed by plaintiff, was refused. It is conceded in this court by both parties, and the concession seems to be supported by *all* the evidence, that Branch had no partner in the saw business and that the articles of agreement between him, Schulte and Fosburg did not constitute a partnership in a legal sense. We think that instruction ought to have been given.

The judgment of the circuit court is reversed, and the cause remanded for new trial. All of this division concur.