DU VIVIER & CO. v. GALLICE et al.

(Circuit Court of Appeals, Second Circuit. November 12, 1906.)

No. 29.

1. BANKRUPTCY—PROVABLE DEBTS—ELECTION OF REMEDIES.

Where a debtor gave to his creditor a series of notes indorsed by a third person, pursuant to an agreement for the compromise and settlement of the debt, which provided that in case of default in the payment of any of the said notes the whole of the debt, "less any payments made in pursuance of this agreement and any collections by legal proceedings or otherwise made upon any of the said notes shall become due and payable forthwith" the bringing of action on the notes against the principal and indorser after default in their payment was not an election by the creditor. between inconsistent remedies, and does not debar him from also proving the original debt, less proper credits, against the estate in bankruptcy of the debtor.

2. CORPORATION—SUCCEEDING TO PARTNERSHIP BUSINESS AND PROPERTY—LIABILITY FOR FIRM DEBTS.

A corporation organized by the members of a partnership, to whom all the stock is issued, to take over all of the property of the partnership, and continue its business at the same place is liable for the debts of the partnership, even though they are not expressly assumed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 100.]

Appeal from the District Court of the United States for the Southern District of New York.

J. A. Garner, for appellants.

G. Nicholas, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. Petition by Gallice & Co. for review of order of the United States District Court for the Southern District of New York, affirming order of referee disallowing their claim against the bankrupt for any excess over $62,500, with interest.

The report of the referee accurately states the facts relevant to the main question discussed herein as follows:

"Gallice & Co. * * * filed their proof of debt in this matter for the sum of $471,926, with deductions amounting to the sum of $12,500. The trustee. and creditors * * * moved to reduce the amount of the claim to the sum of $62,500. The facts have been agreed upon between the parties and show briefly that the claimants, copartners under the name of Gallice & Co., for many years prior to June 30, 1903, had business transactions with Charles A. Du Vivier and another, composing the copartnership of Du Vivier & Co., engaged in the wholesale and retail wine business in New York City; that on June 30, 1903, a corporation was formed under the name of Du Vivier & Co., with a capital stock of $150,000, for the purpose of carrying on a business of wholesale and retail wine merchants, and it continued to carry on said business at 22 Warren Street, in the city of New York, from said 30th day of June, 1903, until November 25, 1904, when it was adjudicated a bankrupt in this district. It also appears that the account of the transactions of the copartnership of Du Vivier & Co., from December, 1901, to April, 1903, appear in the private general ledger of the copartnership in an account entitled 'Gallice & Co.,'. and which shows that by various transactions the amount upon the ledger became $351,868.91. In March and April, 1903, negotiations were had between the said parties,

Gallice & Co. claiming that the sum of $471,926 was owing to them, and on April 14, 1903, an agreement marked Exhibit A, herein, was entered into between the parties and one Francis J. Crilly. * * * "The material portions of said agreement are as follows: 'Whereas, the parties of the first part (Du Vivier & Co.), are indebted to the parties of the second part (Gallice & Co.) in the total sum of four hundred and seventy-one thousand nine hundred and twenty-six dollars ($471,926); * * * And, whereas, the parties of the second part, at the request of the party of the third part (Francis J. Crilly), have agreed to an amicable liquidation and compromise, of the said indebtedness, for the sum of seventy-five thousand dollars ($75,000), provided such sum 'is paid in the manner hereafter specified: Now, therefore, in consideration of the premises and of the mutual covenants and agreements herein contained and of one dollar by each party to the other in hand paid, the receipt whereof is hereby acknowledged, the parties hereto hereby agree as follows: (1) The parties of the first part hereby pay to the parties of the second part the sum of two thousand five hundred dollars ($2,500), in cash, and hereby deliver to the parties of the second part (certain property) * * * and also twenty-nine (29) promissory notes, bearing even date herewith, each for $2,500, bearing 3% interest, and payable respectively, on June 14, 1903, and on the 14th day of each of the twenty-eight months next ensuing, to the party of the third part and by him indorsed to the parties of the second part. * * * (4) The parties of the second part hereby agree upon the due payment by the parties of the first and third parts of all of the said notes and their due performance of the covenants and agreements herein contained. to make, execute and deliver to the parties of the first part, a general release of the said indebtedness of four hundred and seventy-one thousand nine hundred and twenty-six dollars ($471,926); but in case of default in the payment of any of the said notes, the whole of the said debt, with interest, less any payments made in pursuance of this agreement and any collections by legal proceedings or otherwise made upon any of the said notes, shall become due and payable forthwith.'

"Pursuant to said agreement the copartnership paid to Gallice & Co. the sum of $2,500, and executed and delivered to them the series of 29 promissory notes for $2,500, payable respectively to Francis J. Crilly and indorsed by him to Gallice & Co. * * * The note maturing in June, 1903, was paid by the copartnership, Du Vivier & Co., and the notes maturing in July, August and September, 1903, were paid by the corporation Du Vivier & Co. The rest of the notes due at the time of the filing of the proof of claim, had not been paid and the balance of the series of notes have not been paid. In May, 1904, Gallice & Co., after a demand and refusal to pay, commenced two actions in the state of Pennsylvania against Francis J. Crilly, indorser, on the first eight of the said series of notes, which were due and unpaid at that time. No collections, however, have been made thereon. The two actions are now pending. All of the notes which have matured were protested at maturity. No security has been received for the claim, except indorsements of Crilly, if those should be held to be security."

## Upon these facts the referee held as follows:

"It does not seem to me that these notes were given as security for the payment of the indebtedness of $471,000, but were given and accepted for $75,000, the creditor, Gallice & Co., having agreed to reduce their indebtedness to that amount if they could obtain what they supposed was a responsible person to guarantee the payment of the notes. By this agreement a new and independent debt from the corporation to Gallice & Co. was created to the extent of $75,000, and secured by the Crilly indorsements with a right to resort to the original indebtedness in case of default. This new debt was not a security for the payment of the old one, but a substitution for the other. Gallice & Co. were willing to reduce the principal amount because they had ample security as they thought, for the payment of that reduced amount. Now upon a default in the payment of any of the notes, two courses were open to Gallice. They could cancel and return the notes and reinstate the original claim, less the payments made, and this of course

would release Crilly, or they could insist upon their claim against Crilly on his indorsements. * * * ·Insisting upon their claim against Crilly by suing him upon the notes, they, it seems to me, elected to choose that remedy, yielding. as they had to, the remedy to insist upon the original claim. * * * The $75,000 debt and the notes given were in payment or satisfaction of the original debts or as a substitute therefor, subject, however, to the action of Gallice & Co., to cancel the same and reinstate the original claim. This they have not done, but elected to proceed against Crilly, an independent debtor, upon an independent debt, and in doing so have barred themselves from prosecuting the original claim. It seems to me that the claim should be allowed at the sum of $62,500, it appearing that $12,500 of the debt of $75,000 had already been paid."

The theory upon which this conclusion was reached is that Gallice & Co., having elected to proceed upon one of two inconsistent and opposing claims of right, as against Du Vivier & Co., were barred from thereafter prosecuting the original claim against it. The election between inconsistent remedies, if any, affects Crilly only. Whether the effect of the election to prosecute the original claim would be to bar further proceedings against him on the notes remaining unpaid, is a question which is not before us, and as to which we express no opinion. But we are unable to concur in the conclusion that the action of Gallice & Co. barred them from asserting their claim for the entire debt after default in the payment of said notes. We think such a conclusion would be contrary to the express provisions of the agreement considered as an entirety. The ambiguity arising from the claimed inconsistency between the earlier and later portions of the instrument may be resolved by the application of the well-settled principles of construction and interpretation, for the purpose of ascertaining what the parties meant, as manifested by the language they employed, in the light of the surrounding circumstances. It appears from the report of the referee that at the request of Crilly, the creditor having the largest claim against Du Vivier & Co. except that of Gallice & Co., Gallice & Co. agreed to "an amicable liquidation and compromise" of their debt for the sum of $75,000, provided said sum was paid in a certain specified way. By carrying out this arrangement Crilly and Du Vivier could secure, not only a reduction of the debt to said sum, but an extension of time for its payment during a period of more than two years.

On the other hand, it does not appear that there was any consideration for the agreement by Gallice & Co. to release the original indebtedness (other than the $2,500 cash) except said indorsement, but this consideration would have no tangible value if by virtue of the contract Gallice & Co. were prevented from proceeding against the indorser. If the agreement had merely provided that the sum of $75,-000 was to be paid by the cash payment of $2,500 and the delivery of the notes, and had stopped there, there would be much force in the holding of the referee that the cash and notes were received in full payment and satisfaction of the original obligation. But this view ignores or nullifies that portion of paragraph 4 of the agreement, which provides that in case of default in any payment the whole of said debt, less payments or collections, should become due, and whereby the parties of the second part agree to release said indebtedness, not upon the

receipt of the cash and notes, but only upon the due payment of all of said notes and the due performance of all the covenants of the contract. The referee held that while this paragraph of the agreement gave to Gallice & Co. a right, upon releasing their claim on the notes, to resort to the original debt in case of default, yet as they had brought suit against Crilly upon the notes, they had forfeited all right to prosecute the claim for the original debt against Du Vivier & Co. These views conflict with the rule that all the parts of a contract are to be considered together, and "construed in such a way as to give force and validity to all of them and to all the language used where that is possible." Parsons on Contracts, part 2, 505. The agreement expressly provides that the debt, revived by "default in the payment of any of said notes," shall be "less any payments made in pursuance of this agreement and any collections by legal proceedings or otherwise made on any of the said notes." In the face of this situation and of these provisions inserted in the agreement, and in view of the relations of the parties, as shown above, it cannot be successfully argued that if default were made in the payment even of the first note, Gallice & Co. must refrain from any attempt at collection from Crilly, under penalty thereby of a loss of all right to the original debt. On the contrary, the effect of these provisions was to give to Gallice & Co. the right to enforce the payment at least of all except the last of said notes by actions against Du Vivier & Co., or Crilly, or both of them, and thereafter to prosecute their claim for the balance of the debt. It may well be questioned whether Du Vivier & Co., in view of the language providing that they should have the benefit of any collections made on said notes, might not have defended an action to recover on the original debt, provided it appeared that Gallice & Co. had failed to first enforce or exhaust their remedy against the indorser.

As counsel for appellant well says:

"The transaction in effect amounts to this: That a creditor agrees to extend the time of payment of the indebtedness, provided the debtor will induce some one to guaranty the payment of part of the amount due. In such case, the creditor could, of course, proceed against both principal and guarantor at the same time. The only difference in the present case is the additional privilege given to the debtor, that, if a part of the indebtedness should be promptly paid, the creditor would release the remainder of the debt. Unless the court is prepared to hold that there is an inconsistency between the prosecution of a claim against a principal and his surety or between the prosecution of a claim against the maker of a note and its indorser, it must hold that there is no inconsistency in the present case."

Counsel for the trustee claims:

"That there was no assumption by the corporation, Du Vivier & Co. of the debts of the copartnership Du Vivier & Co., further than to the extent of $75,000 of which amount $12,500 had been paid."

This claim is based on the fact that in the bill of sale from the copartnership to the corporation it was provided as follows:

"The property hereby sold is subject to the payment of the debts of said firm of Du Vivier & Co., as now shown upon their books, all of which debts the said corporation hereby assumes and agrees to pay."

Upon this question we concur in the holding of the referee, which is as follows:

"The only express assumption of the debts of the Du Vivier copartnership by the corporation were those shown upon the books of the copartnership, yet, as this corporation was organized, as the agreed statement of facts show, by the same persons who composed the copartnership, for the purpose of carrying on the same business at the same place, with the same employés, using some of the same books of account and issuing all its stock to the members of the copartnership or their nominees, it must, under the authorities, be held liable for the debts of the copartnership, even though they were not expressly assumed by the writings transferring the assets to the corporation. [citing cases] * * * I think it must be held that the corporation Du Vivier is liable for all of the debts of the partnership Du Vivier, whether expressly assumed or not."

The referee has not passed upon the question as to whether the obligation assumed by the bankrupt corporation was the amount of $471,-926, under the original agreement, or the amount of $411,897, under paragraph 8 of the agreed statement of facts.

Said paragraph is as follows:

"The determination of the amount actually owing at the time the said agreement was made, on April 14, 1903, by the copartnership, Du Vivier & Co. to Gallice & Co. would involve a tedious and intricate accounting and the taking of proofs without the United States. The parties agree that that amount is the mean between $471,926, the claim of Gallice & Co., and $351,868, the amount shown to be owing by the books of the copartnership, Du Vivier & Co., viz., $411,897."

We think, in view of this agreement by Gallice & Co. as to the amount actually owing by the copartnership to them, that they cannot now take advantage of the statement of account of $471,926 in the partnership agreement. The only liability assumed by the corporation was for the amounts actually owing by the partnership. The further question has been raised as to whether, in making proof of claim, Gallice & Co. are entitled to prove the whole of said sum of $411,897, less the $12,500 paid thereon, or whether a deduction should be made thereon by reason of the notes held by Gallice & Co., and indorsed by Crilly. This question is not presented by the petition for review, and is not raised by the order of the court. Inasmuch as its determination may depend upon the rights and obligations of Gallice & Co. in the pending litigation against Crilly, we expressly decline to pass upon the question at this time.

The order is reversed, and the cause is remanded to the court below, with instructions to direct the referee to enter an order in accordance with this opinion.