## Acorn Lumber Company, Appellant, v. Friedlander Box Company, Inc., Appellee.

### Gen. No. 30,531.

1. SAVING QUESTIONS FOR REVIEW—*waiver of right to question power of court to vacate judgment by participation in subsequent proceedings.* Where a judgment is entered either in a suit in equity or an action at law, and the judgment is subsequently set aside and the cause then heard, both parties participating in the hearing, such participation waives the question as to the right of the court to vacate the judgment.

2. CORPORATIONS—*liability of corporation formed to continue business of individual, for pre-existing individual debts.* Where a corporation is organized to take over and continue a business theretofore conducted by an individual, and such individual conveyed to the corporation all the assets of such business in exchange for stock in such corporation, it is liable to pre-existing creditors of such individual for the amount of his indebtedness to them.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. MATHEW D. HARTIGAN and T. H. MILLER, Judges, presiding. Heard in the third division of this court for the first district at the October term, 1925. Reversed and judgment entered in this court. Opinion filed May 5, 1926.

NORMAN A. BECK, for appellant.

ROBERT L. HUTTNER, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against the defendant to recover $344.43, being the price of two lots of lumber sold and delivered to the Friedlander Box Company, not incorporated, plaintiff's theory being that after the sale and delivery of the lumber, the box company was incorporated and the assets of the box company, not incorporated, were turned over to the corporation in payment of 2,000 shares of stock. The defendant filed an affidavit of merits and afterwards on the 8th day of January, 1925, the matter came on for hearing and the defendant being absent, there was a finding and judgment in plaintiff's favor for the amount claimed—$344.43. Eight days afterwards the defendant moved the court to vacate the judgment, its motion was supported by affidavit, counter-affidavits were filed, and on January 21, 1925, the court allowed the motion and the judgment was vacated. Afterwards the cause came on for hearing before the court without a jury and there was a finding and judgment in defendant's favor and plaintiff appeals.

Plaintiff contends that the court erred in vacating the judgment for the reason that the affidavits in support of the defendant's motion were insufficient to show that the defendant was diligent and that it had a meritorious defense. This contention is met by the defendant and argument made that the action of the court in setting aside the judgment was justified. But this question is not properly before us, because after the judgment was set aside, the case was set down for hearing and both parties participated in the trial before the court. It has been repeatedly held by this court and by the Supreme Court of this State that where a judgment is entered either in a suit in equity or an action at law, and the judgment is subsequently set aside and the cause then heard, both parties participating in the hearing, such participation waives the

question of the right of the court to vacate the judgment. *Zandstra v. Zandstra,* 226 Ill. App. 293; *Herrington v. McCollum,* 73 Ill. 476; *Weisguth v. Supreme Tribe Ben Hur,* 272 Ill. 541; *Ringholm v. Fitzgerald,* 208 Ill. App. 268.

Plaintiff further contends that the judgment is wrong and should be reversed for the reason that the defendant corporation was organized to take over and continue the business of the unincorporated company, and it accepted all of the assets of the unincorporated company in payment of its capital stock, and, therefore, defendant company is liable for the unincorporated company's debts. We think this contention must be sustained. The question whether a corporation organized to take over and to continue a business theretofore carried on by an individual or by a partnership and where it issues its stock for the assets, is liable for the debts of such individual or copartnership, has not so far as we are advised been squarely decided by our Supreme Court, and the authorities from other jurisdictions are not in harmony. But we are of the opinion that upon reason and authority, the corporation should be held liable in such circumstances. *Du Vivier & Co. v. Gallice,* 149 Fed. 118; *Andres v. Morgan,* 62 Ohio St. 236; *Baker Furniture Co. v. Hall,* 76 Neb. 88; *Reed Bros. Co. v. First Nat. Bank of Weeping Water,* 46 Neb. 168; *Bremen Sav. Bank v. Branch-Crookes Saw Co.,* 104 Mo. 425; *Hall v. Herter Bros.,* 90 Hun (N. Y.) 280; *Ziemer v. C. G. Bretting Mfg. Co.,* 147 Wis. 252; 7 R. C. L. 64; 1 Fletcher Cyc. Corp. sec. 377; *Shober and Carqueville Lithographing Co. v. Kerting,* 107 Ill. 344; *Lemars Shoe Co. v. Lemars Shoe Mfg. Co.,* 89 Ill. App. 245; *Luce Furniture Co. v. Almini Co.,* 192 Ill. App. 386; *Livingston County Agricultural Society v. Hunter,* 110 Ill. 155; *Swing v. American Glucose Co.,* 123 Ill. App. 156.

The record discloses that Ludwig Friedlander for many years was conducting business as the Fried-

lander Box Company, not incorporated, at No. 1300 West Lake Street, Chicago; that on or about February 27, 1924, plaintiff sold to Friedlander two lots of lumber, the price of which aggregated $344.43; that shortly thereafter Friedlander became financially embarrassed, and there were several meetings of his creditors, notice of which was given to plaintiff and other creditors, but plaintiff did not attend the meetings; that on or about July 3, 1924, the Friedlander Box Company was incorporated with an authorized capital stock of $25,000 consisting of 2,500 shares of the par value of $10 per share; that Ludwig Friedlander subscribed for 2,000 shares of the par value of $20,000 and that four other persons subscribed for one share each, having a total par value of $40; that Friedlander turned over to the corporation all of the assets which he had employed in the conduct of his business at the Lake Street address in payment of his subscription of $20,000. The incorporation was afterwards completed, directors were elected, among them being Ludwig Friedlander, and he was afterwards elected president and manager of the corporation and continued to conduct the business substantially as he had done in the past.

Prior to the incorporation, notice was sent by Friedlander to his creditors, including plaintiff, apparently in accordance with an agreement reached by him with most of his creditors, in which it was stated that the defendant was then being organized as a corporation and that Friedlander proposed to sell to the corporation his property at No. 1300 West Lake Street, including the good will of the business, for which the corporation was to pay Friedlander $20,000 by issuing to him that amount of its stock and the defendant contends that by the giving of these notices, the provisions of the Bulk Sales Law were complied with, and, therefore, the defendant corporation was not liable. The Bulk Sales Law has no application whatever to

the case before us and the argument made that it has is inapt. The record discloses, without dispute, that the defendant corporation paid Friedlander nothing for his property which he turned over to it, but that it issued to him 2,000 shares of its capital stock. The defendant corporation having received all of Friedlander's assets for which it paid nothing, it is liable for the debts of the Friedlander Box Company, not incorporated.

In the *Du Vivier* case, *supra,* the United States Circuit Court of Appeals held: "A corporation organized by the members of a partnership, to whom all the stock is issued, to take over all of the property of the partnership, and continue its business at the same place is liable for the debts of the partnership, even though they are not expressly assumed."

In the *Andres* case, *supra,* the Supreme Court of Ohio held that where the members of a partnership engaged in business, agreed among themselves to incorporate for the purpose of continuing the business and the firm assets were transferred to the corporation, each partner receiving his aliquot part of the capital stock and all of the property of the firm being transferred to the corporation, the debts of the partnership became the debts of the corporation, and it was liable therefor whether it expressly assumed the partnership indebtedness or not. The court there said (p. 244): "All that the corporation paid for the property transferred to it was the stock issued in exchange, —simply a metamorphosis of a partnership into a corporation, without any change of individuals; and, unless it assumed the payment of the debts of the firm, there was no consideration for the transfer of the property,—for the stock without the property represented nothing and was worth nothing. That a corporation could be formed, and, with its capital, purchase a partnership and its business, without being

liable for its debts, unless expressly assumed, is not doubted. But this is not such a case. * * *

"There was in fact no purchase in this case. It, as shown, was simply a change from doing business in one capacity to that of another,—the same persons changed from partners to corporators; and this distinction reconciles many cases on the subject that might otherwise seem in conflict. * * * Brushing aside the fiction of a legal entity, it is seen that no real change has taken place, and that, in looking to the new formation for payment, the creditor looks to the same persons, possessed of the same property and rights, he contracted with in the first instance."

In the *Baker Furniture Co.* case, *supra,* the Supreme Court of Nebraska held: "A corporation organized for the sole purpose of continuing the business of a partnership firm, which takes over to itself the ownership and control of the assets thereof, thereby assumes the debts of such firm to the extent of the property so received."

In *Luce Furniture Co. v. Almini Co.,* 192 Ill. App. 386, it was held: "A corporation created to take over the business of another corporation of the same name whose charter had expired, the capital stock of which was paid by the transfer of all the property and assets of the latter, is liable for the unpaid purchase price of goods ordered by the latter prior to the expiration of its charter." To the same effect is the *Hunter* case, where it was said (p. 160), "creditors of the institution, whether their claims accrued before or after the reorganization, all stand upon precisely the same footing, and the only way for one to obtain an advantage over the others is by the exercise of superior diligence in the prosecution of his claim to judgment, and thus secure a judgment or execution lien upon the company's property." The same rule is true whether the business was originally conducted by an individual or a corporation which individual or cor-

poration afterwards turned over all of his or its assets to a new corporation, nothing being paid but stock in the new corporation. It follows from what we have said, there being no dispute that plaintiff's claim was due and unpaid, that it was entitled to a judgment.

The judgment of the municipal court is reversed and judgment entered in this court in favor of plaintiff against the defendant for $344.43.

*Judgment reversed and judgment entered in this court.*

THOMSON, P. J., and TAYLOR, J., concur.