## WESTERN SCREW AND MANUFACTURING COMPANY
### *v.*
### JAMES COUSLEY.

1. CORPORATIONS—*not liable for debts created before their organization.* A corporation, after its organization, is not liable for the payment of debts contracted previously thereto, without an express promise to pay them after acceptance and receipt of the benefit of that for which they were incurred.

2. An attempt was made to organize an incorporation under the general law of the State, with a capital stock of $100,000. After a part of the stock was subscribed, the stockholders held a meeting and employed a superintendent to attend to work being done for the proposed corporation, which he commenced doing, but afterwards, when it was ascertained that the requisite subscription of stock could not be obtained, he quit work. Most of the stockholders afterwards formed another company, with a capital stock of $50,000, for the same purpose of the first one, and completed their organization and incorporation: *Held*, that, even if the first company had completed its organization, the superintendent could not have recovered against it for his services, much less against the new company.

APPEAL from the Alton City Court; the Hon. HENRY S. BAKER, Judge, presiding.

Mr. CHARLES P. WISE, for the appellant.

Mr. J. H. YAGER, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit brought by Cousley, the appellee, to recover compensation for services claimed to have been rendered by him for appellant prior to its incorporation. The plaintiff below recovered, and the defendant brings the case here by appeal.

The facts of the case, in substance, are, that one Ingalls was the patentee of a certain patent for casting screws, and desired to form a company at Alton, in this State, for the purpose of manufacturing his patent screws. With that object in view, he purchased and had conveyed to him a piece of ground, with buildings formerly used as a foundry, and endeavored to have organized, under the general law of the State, a company with a capital stock of $100,000, to be called the Western Screw and Manufacturing Company, and to which company, when organized, he would sell the property. The plaintiff subscribed for $500 of the stock, upon condition that he was to be employed by the company, and pay for the stock in labor. After a part only of the stock was subscribed, the stockholders held a meeting, and authorized Ingalls to act as superintendent in having work done about the building; the plaintiff was employed by him, and did the work for which suit is brought, from March 3, to May 18, 1873, it consisting in keeping the time of the workmen employed. The requisite amount of stock could not be obtained, and the organization could not be completed, and appellee quit work. Most of those who had subscribed for stock concluded to form a new company, having the same name and object, with a capital stock of $50,000; other subscribers, to the amount of $16,000, were obtained, and this company, the present defendant, was organized. The company purchased

the land and building from Ingalls, August 5, 1873, for the expressed consideration of $11,000, receiving from him a general warranty deed. In his settlement with the company for the purchase, Ingalls put in a list of claims he owed for work previous to the organization, and they were allowed, and the money paid to Ingalls. He testifies that he handed in all the accounts except Cousley's and one or two others, which he lost, and they were not handed in.

In order to the formation of a corporation under the general law, a certain required statement in writing, stating, among other things, its capital stock, has first to be filed in the office of the Secretary of State. He then issues to the persons who make the statement, "a license, as commissioners, to open books for subscriptions to the capital stock of said corporation."

The third section of the law provides that, "as soon as may be *after the capital stock shall be fully subscribed,* the commissioners shall convene a meeting of the subscribers, for the purpose of electing directors or managers, and the transaction of such other business as may come before them."

The fourth section directs that the commissioners shall make a full report of their proceedings, including therein, among others, the names of the directors elected, which report shall be filed in the office of the Secretary of State, who shall thereupon issue a certificate of the complete organization of the corporation, making a part thereof a copy of all papers filed in his office, in and about the organization, and the same shall be recorded in the office of the recorder of deeds of the county where the principal office of the company is located; and that, "upon the recording of the said copy, the corporation shall be deemed fully organized, and may proceed to business."

The plaintiff was employed and did the work for which suit is brought, before the stock, under the first attempted organization with $100,000 capital stock, was fully subscribed, and before any election of directors, and it is evident that any contract made for the services before that time, by such stockholders as had then subscribed, would not be binding upon the company if afterwards it had become fully organized, much

less upon the present company, after the old attempted organization had been abandoned. The work had all been done previous to May 18, 1873. It was not until July 15, 1873, that the first step was taken for the formation of the present company, with a capital stock of $50,000, by making its application by filing the required statement in writing. All the requisites of the law had to be again complied with, the statement made, the license to open books for subscription, and the commissioners, except Ingalls, were all different.

It seems preposterous to claim that a corporation is under any legal liability for debts contracted before the first step had been taken to bring it into existence.

This court has decided that a corporation, after its organization, is not liable for the payment of debts contracted previously thereto, at least without an express promise to pay them after acceptance and receipt of the benefit of that for which they were incurred. *Rockford, Rock Island and St. Louis Railroad Co.* v. *Sage*, 65 Ill. 328.

The plaintiff should look to whoever employed him, for his pay. Surely the defendant was not his employer.

Had Ingalls, at the time of the sale of this property to the company, presented the account of the appellee, and insisted upon it as a just item in the cost of the building, very likely it would have been allowed and paid to Ingalls as a part of the purchase price. But it would have been entirely as a matter of option, and not one of obligation.

The expectation and understanding between Ingalls and the subscribers toward the stock of the company first attempted to be organized, that that company, when organized, would take the building, did not bind the present company to take it. When it became organized, and empowered to transact business, it was at entire liberty to purchase this property of Ingalls, or to procure, or build any other works for its use. It saw fit to take this property of Ingalls at $11,000, as expressed in the deed. An addition to the purchase price, of the amount of appellee's claim, had it been demanded before the purchase,

might have defeated the purchase ; but whether so or not, there was no legal obligation on the part of this company to pay it.

The judgment must be reversed.

*Judgment reversed.*