## Lemars Shoe Co. v. The Lemars Shoe Mfg. Co., for use of Benjamin Levering, Trustee.

1. CORPORATIONS—*Action of the President When the Act of the Corporation.*—The action of the president of a corporation, who, being the owner of all but two shares of the stock, acts with the acquiescence of the only other active stockholder and director in the manner in which all the business of the corporation has been done, will be regarded as the action of the corporation.

2. SAME—*When There are no Stockholders Except Those Who are Directors.*—While the directors of an incorporated company represent the stockholders, and their action must be official in order to bind the stockholders, yet where there are no stockholders except those who are directors, and they assent to an action, such as the assignment of insurance policies to secure an existing obligation, it can not be held that such action is a fraud upon any one or that it is invalid.

3. SAME—*Authority of Agents may be Inferred.*—Authority in the agent of a corporation may be inferred from the conduct of its officers, or from their knowledge and neglect to make objections.

4. SAME—*When Existing Liabilities are Presumed to be Assumed.*—Where a corporation is a mere continuation of the same business previously transacted by the same parties, under a different name, and receives and holds the property of such parties. it must be presumed to have assumed the liabilities with which said property was known to be charged.

5. SAME—*Assignment of Insurance Within the Scope of the President's Authority.*—The assignment of insurance policies by the president of a corporation, after a loss sustained, for the purpose of securing a corporate liability, is merely a recognition and payment of its own obligations and within the scope of his authority as president of the corporation.

6. SAME—*Power of the President to Incur Debts After the Corporation has Ceased to do Business.*—To hold that the president of a corporation can exercise corporate power to incur debts in the corporate name and impose corporate liability after the corporate property has been destroyed by fire and the corporation has ceased to do business and changed its location, without any semblance of corporate authority, would be unwarrantable,

7. SAME—*Execution of a Power of Attorney to Confess Judgment After the Corporation has Ceased to do Business.*—The execution by the president of a corporation after it has ceased to do business, of a power of attorney to confess a judgment against it upon an obligation made by him, is not within the scope of his authority.

8. SAME—*Powers of Officers After the Corporation Ceases to do Business.*—When a corporation ceases to do business, all implied powers in its officers to bind it by incurring new obligations are at an end. The president may, without special authority from the board of directors, perform all acts of an ordinary nature, which by usage or necessity are incident to his office, and bind the corporation by contracts made in the usual course of its business; but when the corporation retires from business this authority ceases to exist.

9. PRESUMPTIONS—*When the Debt for Which the Note Was Given Accrued.*—Where a note is executed by the president of a corporation for a corporate liability, it must be presumed in the absence of evidence to the contrary, that the liability for which the note was given was contracted on the day the note bears date.

10. CONFESSION OF JUDGMENTS—*On Warrants Executed Without Authority.*—Where a power of attorney to confess a judgment is executed by the president of a corporation without authority, a judgment confessed upon it is void and not merely voidable.

**Judgment,** by confession. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Reversed. Opinion filed May 15, 1900.

**Statement.**—A judgment by confession was entered in the Circuit Court against the Lemars Shoe Manufacturing Company for $7,350, upon a judgment note payable to Benjamin Levering, trustee, signed, " Lemars Shoe Manu-facturing Company, by W. E. Goodrich, Prest." Garnishee summons was issued against certain insurance companies, who, it is claimed, are indebted to said " Lemars Shoe Manu-facturing Company " by reason of policies of insurance upon property of said company which had been destroyed by fire. These policies are claimed by appellant under prior assign-

Lemars Shoe Co. v. Lemars Shoe Mfg. Co.

ment signed, "Lemars Shoe Mfg. Co., W. E. Goodrich, Prest.," and upon being advised of the said judgment by confession and the garnishment proceedings, appellant filed its petition of interpleader. Appellee replied, denying that appellant is the owner or entitled to receive any of the moneys due under said policies. The issue made by the interplea and replication was submitted to the court without a jury. The Circuit Court found against the interpleader and entered judgment in favor of appellee against the garnishees for the money due under the insurance policies.

BURTON & REICHMANN, attorneys for appellant.

The law is universally well settled "that the president has no implied power to execute a power of attorney to confess judgment against the corporation. He can not lawfully exercise such power unless it has been given to him by express terms, by the board of directors," or impliedly conferred by usage and general course of dealing. Adams v. Cross-Wood Printing Co., 27 Ill. App. 317.

The power in question is not inherent in or incident to the office from either usage or necessity. Stokes v. New Jersey Pottery Co., 46 N. J. L. 237; Thew v. Porcelain Mfg. Co., 5 South Car. (N. S.) 415; Freeman v. Plaindealer Co., 9 Luz. Leg. Reg. 37; McMurray v. Oil Co., 33 Mo. 377.

The principle upon which an officer of a corporation can bind it by making its promissory notes, with or without a warrant of attorney to confess judgment, is that of agency. An agent can execute such contracts only when authorized to do so, but the fact of agency appearing, and the papers being shown to have been duly executed, we do not understand it to be necessary, in the first instance, that proof of the authority must be made upon confession of judgment. It is true that if it should turn out that authority did not exist, the judgments would be void—not because the proof of authority was not filed with the clerk, but because of the absence of authority. Snyder Bros. v. Bailey, 165 Ill. 452.

The powers of a president of a corporation *virtute officii*

over its business and property are strictly the powers of an agent—powers delegated to him by the directors, who are the managers of the corporation, and the persons in whom, as its representatives, the control of its business and property is vested. If the corporation be organized for business purposes, the president is its chief executive officer. He may, without any special authority from its board of directors, perform all acts of an ordinary nature, which, by usage or necessity, are incident to his office, and may bind the corporation by contracts in matters arising in the usual course of its business. To this extent the president, in virtue of his election as such, becomes the agent of the corporation. Beyond the powers which usage and custom and the necessities and convenience of the business require in the executive officer of a corporation, he has no more control over the corporate property and funds than any other director. Stokes v. The New Jersey Pottery Co., 46 N. J. L. 237.

The Supreme Court of Iowa has clearly recognized the foregoing to be law. Hardin v. Iowa Ry. Co., 78 Ia. 729; Blanding v. D. I. and D. Ry. Co., 88 Ia. 235; Templin v. C. B. & P. Ry. Co., 73 Ia. 548.

When the *prima facie* presumption of authority is overcome by evidence showing no affirmative authority by resolution of the board of directors, or otherwise, then proof of implied authority becomes necessary. There is no presumption of implied authority. The evidence must affirmatively disclose it, and the burden of proof is upon the party asserting the validity of the judgment note and the judgment expressed thereon. This implied authority may be conferred by a general course of dealing or knowledge and participation on the part of the directors. Atwater v. Am. Ex. Bank, 152 Ill. 605; Chicago Tip & Tire Co. v. Chicago Nat. Bank, 176 Ill. 224.

An assignment of a corporate claim by the manager and president, with the knowledge and consent of directors, is sufficient, though no action by the board had been taken. Greig v. Riordan, 99 Cal. 316.

See also, Greer v. Seller, 64 Ill. App. 505; L. N. A. & C. R. R. Co. v. Carson, 51 Ill. App. 552; 151 Ill. 444.

N. H. HANCHETTE and W. P. BLACK, attorneys for appellee.

The law is now perfectly well settled that directors of a corporation are trustees for the stockholders, and in the case of a corporation indebted, they are trustees not only of the stockholders but for the creditors of the corporation, and as such trustees the directors have no power to give away the corporate property, or to use the same for the promotion or advancement of their own personal interests or the interests of any one of them. We cite in support of this proposition, the following authorities: Holder v. La Fayette, B. & Miss. Ry. Co., 71 Ill. 106; Beach v. Miller, 130 Ill. 162; Roseboom v. Whittaker, 132 Ill. 87; Ellis v. Ward, 137 Ill. 509; Atwater v. American Ex. Bank, 152 Ill. 605; Koehler v. Black River Falls Iron Co., 2 Black, (U. S.) 715; Richardson's Extr. v. Green, 133 U. S. 30–43; Firemen's Loan & Trust Co. v. San Diego St. Ry. Co., 45 Fed. Rep. 518.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Facts material in consideration of this case are as follows: W. E. Goodrich purchased of appellant in December, 1896, a shoe manufacturing plant consisting of land and buildings thereon, together with all the fixtures, machinery, tools and material contained in said factory, agreeing to pay $15,000 therefor. By the terms of a written contract dated December 12, 1896, Goodrich agrees to pay the purchase money in installments of $2,500 each, the first installment six months from that date and the others respectively every six months thereafter. The first installment became due or about June 12, 1897, but before it was paid the property was consumed by fire the morning of June 13, 1897.

The contract between appellant and Goodrich required the latter " either by himself or some other responsible person to put the factory into operation within sixty days

from its date" and to "continue to operate the same until all payments have been made," etc. Accordingly Goodrich was given possession of the plant and other property about January 10, 1897, and February 1, 1897, before the expiration of the sixty days, caused a corporation to be organized under the laws of Iowa, called "The Lemars Shoe Manufacturing Company," to which he turned over the plant and other property acquired from appellant, including miscellaneous material of the value of $6,000 or $7,000. The amount of the capital stock was fixed at $50,000, represented by 500 shares, each of the par value of $100. Goodrich took 498 of the shares, which were supposed to be fully paid for by the transfer of the property referred to. Of the remaining two shares one was issued to Jacob C. McClanahan, and another is said to have been issued to a person designated as W. M. Smith. McClanahan was an employe of Goodrich, who says he "personally hired him to go there on a salary." McClanahan states that he paid in cash the par value of his one share of stock, although not very clear as to how or when such payment was made. Smith, the alleged holder of the other share, who was appointed vice-president, and one of the three directors of the corporation, the others being Goodrich and McClanahan, was never in Lemars, never attended a meeting of the stockholders or directors, was never seen by his fellow-director, McClanahan, who was the secretary, and is called by Goodrich in his testimony, "a purely fictitious person, for the purpose of making up the stockholders and the directors of the corporation," although he afterward says, "Mr. Smith was a real man." He testifies, however, that he don't know where Smith resided, what his business was, nor how he paid for his stock. The new corporation, in the language of its secretary, "stepped right into the shoes of Goodrich and continued the business without any changes so far as the conduct of the business was concerned." Goodrich says that "in the transactions of the corporation with the outside world he (McClanahan) was my representative of his part of the business." It thus

appears that the new corporation, to all practical intents and purposes was Goodrich himself, carrying on the business under the corporate name.

When the corporation was organized, Goodrich procured the insurance in question, together with other insurance, in the name of the corporation, and also certain policies in his own name, in the latter of which the loss, if any, was by the terms of the policies payable to appellant. This latter insurance appears to have been taken in compliance with a provision of the contract for purchase which required $6,000 of insurance to be made so payable to appellant as its interest should appear.

The morning of June 13, 1897, the plant of the new corporation was destroyed by fire, and as Goodrich testifies, " upon the destruction of the plant the business came to an end in Lemars. My property was gone and I didn't conduct the business any further at Lemars."

The day after the fire the following instrument was executed:

" LEMARS, IA., June 14, 1897.

" To agents of insurance companies holding risks on our property at Lemars, Iowa:

" We hereby sell, assign and transfer to the Lemars Shoe Co., individual policies on our building, stock and machinery to the amount of $13,500, including this made payable to the Lemars Shoe Co. direct. These policies to be selected by the Lemars Shoe Co. and myself, and the Lemars Shoe Co. to make no claim on any other policy, whether these policies selected are paid in full or not. If policies are paid in full $250 to be refunded by the Shoe Co.

LEMARS SHOE MFG. CO.,<br>W. E. GOODRICH, Prest."

W. E. GOODRICH:

" We agree to the above.

LEMARS SHOE CO.,<br>By M. A. MOORE, Prest."

Goodrich testifies that no express authority was granted by the board of directors for assigning these policies.

Two days later the selection of policies was made. They are seven in number, each for the sum of $1,000, and they

were assigned "for the purpose of paying the Lemars Shoe Company what was owing to them on account of the sale of the factory and stock on hand." Upon the back of each policy is an assignment bearing the signature, "Lemars Shoe Mfg. Co., W. E. Goodrich, Prest." In one case the form is "By W. E. Goodrich, Prest.," and in another the signature has a scroll attached with the letters (L. S.) indicating a seal. The policies in controversy were turned over to appellant, the loss was adjusted, the companies agreed to pay fifty cents upon a dollar, and in due time drafts for that purpose were delivered by the companies to Goodrich apparently for transmission to appellant. They were still in his hands or the hands of his representative when these proceedings were instituted, apparently with his connivance.

It is first contended by appellee's counsel that the assignment to appellant of said policies so selected was made in payment of the individual debt of Goodrich, and not having been expressly authorized by the board of directors of the corporation was invalid.

That there was no formal authorization at a regularly called meeting of a board of directors is conceded. But it is equally true that no such formal meetings were called for the transaction of any of the corporate business. The only stockholders and directors who ever appeared or acted in any manner at any time for the corporation were Goodrich, the president, and McClanahan, the secretary. They held all the stock and all the offices, if we except Smith, whom the evidence tends to show is a mythical personage. There was one meeting of the stockholders, Goodrich and McClanahan, to elect directors, at the time the corporation was formed. There was one meeting of the directors, Goodrich and McClanahan, held at or about the same time. If there were ever any other meetings formally held, there is no evidence of it in this record worth considering. At this directors' meeting, the by-laws, consisting of four short sections, were adopted. The first of these provides that the corporate powers shall be exercised by a board of three

directors, two of whom shall constitute a quorum, " and all business transacted by said quorum shall be as binding on this corporation as if each and every director was present." Goodrich testifies that as president, he "had the general management and control of the business;" that he "designated the policies of the company and the business it should do, the character of the business, purchases it should make, and everything of that character."

We agree with appellant's counsel that the preponderance of the evidence and the surrounding circumstances tend to show that McClanahan was present part of the time, at least when the transfer of the policies was agreed to, and that the assignment was made with his knowledge and at least implied assent. He now says that he formally refused his consent but it is difficult to credit his testimony in this respect, and he is expressly contradicted by preponderating evidence. His position was practically that of Goodrich's employe. The latter himself testifies that McClanahan was not asked to take any active part in the transaction, and indicates quite clearly that he was not regarded as a factor of any importance except in such matters as were intrusted to him by Goodrich. The latter conducted the affairs of the company as he saw fit, and McClanahan as his employe acquiesced. Such was the uniform course of the business. If the latter as a director objected to the assignment at all, he certainly never protested to the insurance companies, nor objected to their settling with appellant, as the assignment contemplated. He admits that he knew what was going on. The transfer was not hastily consummated. The policies were left in the hands of Goodrich for some days afterward, and deliberately returned by him. There is no satisfactory evidence that the assignment was forced or that there was any controversy whatever, and it must be borne in mind that the stockholders are not attacking the transaction. The objection comes from a stranger claiming to be a subsequent creditor.

We must regard the action of the president, the owner

of all but two shares of the stock, and acting with the acquiescence of the only other active stockholder, and director in the manner in which all the business of the concern was done, as the action of the corporation.

" Whilst the directors of an incorporated company represent the stockholders, and their action must be an official action to bind the stockholders, yet where, as here, there are no stockholders except those who are directors and they assent to a contract of this character, it can not be held that such a contract is a fraud on any one or that the same is invalid." Pain v. Farson, 179 Ill. 193.

In Sherman v. Fitch, 98 Mass. 59, it is said:

" It is not necessary that the authority (to execute a mortgage in behalf of the corporation) should be given by formal vote. Such an act by the president and general manager of the business of the corporation with the knowledge and concurrence of the directors or with their subsequent and long continued acquiescence may properly be regarded as the act of the corporation. Authority in the agent of a corporation may be inferred from the conduct of its officers or from their knowledge and neglect to make objections, as well as in the case of individuals."

But it is urged that the assignment was made in payment of the individual debt of Goodrich. It is true, doubtless, that the obligations in question were made by Goodrich in his own name before incorporation. But the incorporation was not inconsistent with the contract of purchase made with appellant. By the instrument Goodrich agreed "either by himself or some other person" to put the factory in operation within sixty days and to "continue to operate the same until all payments have been made." It was with knowledge of this agreement that Goodrich as an individual immediately thereafter transferred, and Goodrich as president and McClanahan as secretary of the corporation and owners of its stock, received the property bought under the said contract. It can not be disputed that the corporation was a mere continuation of the same business by the same parties, under a different name. The corporation under such circumstances must be held to have received and to hold the property thus acquired from appellant subject to

the payment of the debt with which it was known to be charged. Having absorbed the property, the corporation must be presumed to have assumed the liabilities thereon. The assignment was intended apparently to transfer money due the corporation upon the very property it had acquired from appellant. To have retained this money for other purposes would have been to perpetrate a fraud upon appellant under cover of the corporate name. The assignment of the policies by the corporation was merely a recognition and payment of its own obligation, and the transfer was within the scope of the president's authority. Authorities in accordance with the foregoing views are Hibernia Ins. Co. v. St. L. & N. O. T. Co., 13 Fed. Rep. 516; Reed Bros. v. First Nat. Bank, 64 N. W. (Neb.) 701; Grenell v. Detroit Gas Co., 70 N. W. (Mich.) 413.

It is conceded that the judgment note for $7,100 upon which the judgment by confession was entered, which is the foundation of the proceedings against the garnishees, was executed by Goodrich alone, without any pretense of authority from other stockholders or directors of the Shoe Manufacturing Company. It is contended by appellant that the judgment obtained on this note is void.

The note was executed by Goodrich, and is dated October 26, 1897, more than four months after the corporation purporting to be its maker had lost all its property by the fire and had ceased to do the business for which it was created. The judgment by confession was entered November 4th following. Goodrich testifies that he returned to Chicago after the fire at Lemars. He states that he " did business in Chicago under the name of Lemars Shoe Manufacturing Company," and says that McClanahan was engaged in business with him there " till we stopped business." If the abstract is correct in this respect, and it is not questioned, Goodrich does not clearly assert that the Lemars Shoe Mfg. Co., as a corporation, resumed business after the fire anywhere, although he implies that it did. His testimony is that he himself did business under that name, and it is evident that the business carried on in Chicago was a new and purely individual business conducted by and for himself.

In this he does not appear to have been successful and at the request of his own attorney, who says he had received claims for collection purporting to be against the old corporation, Goodrich executed the judgment note in question, which it is now sought to enforce, out of money due from the policies assigned and transferred to appellant more than four months before. The record is silent as to when and how or by whom the debt supposed to be represented by the note was contracted. The only competent evidence that any such debt exists for which the corporation is liable, is the note itself. If this is to be considered a liability of the corporation, it must be presumed in the absence of evidence to the contrary to have been contracted October 27, 1897, the day of its date. But at this time the corporation as such, had ceased doing business. Goodrich says: "The corporation continued in business from February 4, 1897, to June 12, 1897. The business was terminated because of the loss of the entire plant by fire." The books of the concern disappeared shortly after the fire, and Goodrich says he "never had any cause to search for them," and that "after the fire when we continued business in Chicago we opened up new books," and he does not know where even these books are. But if the business terminated as he says it did, June 12th, because of the loss of the entire plant and property of the corporation by fire, some explanation is due from appellee, of the ground upon which he bases his claim to hold the corporation liable on a debt contracted apparently long after the corporation had ceased business.

It does not appear that the Iowa corporation, organized as it was to carry on a manufacturing business in that State, ever took any corporate action to change its business from manufacturing, to "buying and selling shoes" and conducting a "wholesale commission boot and shoe company," in Chicago. Its articles of incorporation required that its principal place of business should be at Lemars, Iowa. But it had no place of business there after the fire. In the conduct of his business at Chicago, Goodrich

testifies:  " I bought the goods and sold them again."  " I had a place of business here in Chicago at which the Lemars Shoe Manufacturing Company was doing business." This alleged change in location and business was made without any action of stockholders or directors, and without a semblance of corporate action.  To hold that Goodrich as president could thus exercise the corporate power to incur debts in the corporate name and impose corporate liability, would be unwarrantable.

Unlike the transfers of the policies to appellant in payment of an existing debt, while the company was still conducting its affairs, the execution of a power of attorney to confess a judgment against the company on an obligation made by Goodrich in the name of the corporation, after it had ceased business, was not within the scope of his authority.  When the corporation ceased to carry on its business, all implied power in its officers to bind it by incurring new obligations was at an end.  The president may, without special authority from a board of directors, perform all acts of an ordinary nature, which by usage or necessity are incident to his office, and bind the corporation by contracts made in the usual course of its business.  But when it retired from business this authority no longer continued. See Stokes v. The New Jersey Pottery Co., 46 N. J. L. 237; Adams v. Cross-Wood Printing Co., 27 Ill. App. 313. Thereafter Goodrich could not carry the corporation with him over the country and set it up and put it in motion to suit his own convenience, without any pretense of corporate action.

Having been executed by Goodrich without authority, the power of attorney to confess this judgment was void, and therefore the judgment based thereon was also void. The court had no jurisdiction to enter judgment against a party not brought in by service of process, unless it was conferred by the warrant of attorney; and if that conferred no jurisdiction none existed, and the judgment is void, not merely voidable.  And this is true, notwithstanding the judgment was perhaps *prima facie* valid, and would have

been, even without the corporate seal attached to the warrant of attorney. Snyder v. Bailey, 165 Ill. 447 (453). But the facts in evidence rebut the presumption of authority to execute either the note or the power of attorney, and of these facts appellee and his attorney appear to have had full notice. "It is one of the elements of a *prima facie* case, that it is subject to be rebutted and destroyed by evidence to the contrary." Joliet Electric L. & P. Co. v. Ingalls, 23 Ill. App. 45 (53).

The judgment of the Circuit Court must be reversed, but the cause will not be remanded. Reversed.