Maurice M. Kraft, Appellee, v. Garfield Park Community Hospital, Appellant.

Gen. No. 39,784.

614

Opinion filed October 10, 1938.

ARTHUR A. BASSE and BIPPUS, ROSE, BURT & PIERCE, both of Chicago, for appellant.

DAVID H. KRAFT and DAVID K. TONE, both of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendant to recover the face value of four real estate bonds aggregating $1,700 and interest thereon. There was a trial, a finding and judgment in plaintiff's favor for $1,835, and defendant appeals.

The record discloses that April 1, 1926, the Garfield Park Hospital, a corporation organized for profit, was operating a hospital in Chicago and on that day issued its bonds for $350,000 secured by a trust deed on the hospital. It continued to operate the hospital until some time in April, 1932, when a new corporation, not for profit, was organized, viz., the Garfield Park Community Hospital, a corporation, the defendant. The purpose of this hospital was to take over and continue to operate the hospital. Shortly thereafter the real estate and other assets were conveyed by the old to the new corporation by proper deed of conveyance and bill of sale. May 1, 1932, the new hospital executed its real estate mortgage bonds aggregating $485,600, secured by a trust deed on the hospital, which was a junior lien. About $265,000 of the first issue of bonds was still due and unpaid. The bonds issued by the new corporation were delivered to the stockholders of the first corporation—dollar for dollar; bonds of the par value were delivered to each stockholder equal to the face value of his stock. Substantially the same parties continued to operate the hospital under the new corporation as under the old, and the business was conducted in the same manner. The new corporation paid interest on the first bond issue until October, 1933, and it continued to pay such interest but at a lower rate until about April, 1936. After that time no further payment was made to plaintiff and the principal of the first bond issue then became due. Upon the maturity of plaintiff's bonds he brought suit directly against the new corporation on the theory that the new corporation was organized to continue the

business of the old corporation and succeeded to all its assets, and that it assumed all debts of the old corporation. May 3, 1932, a few days after the new corporation was organized, the old corporation voluntarily dissolved. The necessary papers were filed with the Secretary of State, in which the president and secretary of the old corporation swore there were no debts or liabilities of the old corporation, and no assets.

The evidence is to the effect that the old corporation conducted the hospital as a charitable institution, receiving and treating patients whether they were able to pay or not, and this same method was continued by the new corporation except that it treated more charity patients.

Counsel for defendant in their brief say, ''After the Garfield Park Community Hospital [the new hospital] took over the hospital more charity patients were admitted than before. The County Court of Cook county, by an order entered . . . found that for the year 1933 the land occupied by the hospital was the property of a beneficent and charitable organization, actually and exclusively used for charitable and beneficent purposes, and ordered that judgment be refused against said property'' for non-payment of taxes. Apparently the purpose of organizing the new non-profit corporation in lieu of the old corporation which was organized for profit, was to exempt the property from taxes on the ground that the hospital would be operated as a public charity. *People v. Ravenswood Hospital*, 238 Ill. 137.

Defendant contends that it did not assume the indebtedness evidenced by the first mortgage bond and therefore plaintiff could not maintain his suit against it; that the only reference to the first bond issue in the deed conveying the property to the new corporation was that the conveyance was made ''subject to the

general taxes for the year 1928 and subsequent years and to the lien of the trust deed securing the balance of approximately $265,000''; that in addition to conveying the real estate to the new corporation, the old corporation also transferred, by bill of sale to the new corporation, all personal property located in the hospital, including books of account, bills receivable, promissory notes and other evidences of an indebtedness; and that the only indebtedness assumed by the new hospital was the current accounts of the old hospital amounting to approximately $5,000. In support of this counsel referred to the resolution shown by the minutes of the old corporation of April 22, 1932, in which the president and secretary of the old corporation were authorized to execute a warranty deed conveying the premises to the new corporation and further authorized the delivery of the deed, in consideration of junior mortgage bonds of the new corporation amounting to $485,600, ''and the assumption of the Garfield Park Community Hospital of current debts amounting to approximately $5,000.''

Counsel for plaintiff, in support of their contention that the new hospital corporation assumed the debts of the old corporation, including the $265,000 of the bond issue, pointed to section 5 of the By-Laws of the new corporation. That section is as follows: ''Until the payment of all indebtedness proposed to be assumed and undertaken by this corporation and secured by a trust deed on property which it proposes to acquire, the trustee named in such trust deed shall have the right to elect or select a majority of such Board of Directors''; and counsel say, ''The obligation of the 'old' hospital on its *outstanding* series of first mortgage bonds, is the *only* indebtedness to which said 'By-Law' could have reasonably referred. *Otherwise,* the verb 'secured' (past tense) would *not* have been used in the 'By-Law' but the words 'to be secured' (denot-

ing the *future* tense) would instead have been employed, since the series of junior bonds were not executed at the time the 'By-Law' was adopted (Abst. 34.) Also, the 'Minutes' show that the 'Directors and Officers' of the 'old' corporation continued to retain the same positions with defendant *without* the 'intervening,' 'outside' selection by the Trustee *vaguely* designated in the 'By-Law.'" In reply to this contention counsel for defendant say, *"This section of the By-Laws is not subject to such misconstruction.* It clearly relates to the issuance of $485,600 principal amount of junior mortgage bonds to be secured by a trust deed conveying the premises in question to the Pioneer Trust and Savings Bank as trustee. The right to select a majority of the board of directors by the trustee was granted to the trustee in the trust deed securing the junior bond issue."

We are unable to agree with the contention made by defendant. The By-Law provides, "Until the payment of all indebtedness proposed to be assumed and undertaken by this corporation"—the new corporation. Obviously the new corporation which was issuing the $485,600 bonds would not be assuming the payment of these bonds; that was its direct obligation. The word "assumed" in the By-Law clearly does not apply to the new bond issue, but refers to the old bond issue.

But plaintiff further contends that whether there was a direct assumption by the new corporation to pay the first bond issue, defendant is liable by operation of law. We think this contention must be sustained. The same persons who were interested in the old corporation, which was organized for profit, caused the new corporation to be organized not for profit. The old corporation had been operating a hospital for a number of years and owned the property, all of which was transferred to the new corporation. The same

officers who operated the old hospital were the officers of and continued to operate the hospital. The new corporation might be said simply to have put on a new coat. *Andres v. Morgan,* 62 Ohio St. 236; *Acorn Lumber Co. v. Friedlander Box Co.,* 240 Ill. App. 425; *Chicago Smelting & Refining Corp. v. Sullivan,* 246 Ill. App. 538 (same case, 252 Ill. App. 259). Certiorari was denied by the Supreme Court June 26, 1929, from the judgment entered in the last mentioned case. *McCarthy v. Liberty Nat. Bank,* 175 Pac. 940; *Collinsville Nat. Bank v. Esau,* 176 Pac. 514.

In the *Sullivan* case (246 Ill. App. 538) we said: ''We are asked to hold that, where a corporation is organized to take over and continue the business of a firm and all of the firm's assets are transferred to it in exchange for its stock, the debts and obligations of the partnership become the debts and obligations of the corporation without any express agreement to assume the liability. We recognize a conflict of decisions on this point. So far as we are informed it has never been directly decided by our Supreme Court. We are disposed to be in accord with the conclusion expressed in the opinion of another division of this court in *Acorn Lumber Co. v. Friedlander Box Co.,* 240 Ill. App. 425, and to hold that, where the former partners are the only members of the corporation and the assets of the partnership have been transferred to the corporation for the continuance of the business in exchange for stock and without other consideration, and where, to use the apt words in the opinion in *Andres v. Morgan,* 62 Ohio St., 236, 'the members of the partnership may be said to have simply put on a new coat,' the corporation thereby impliedly assumes the partnership debts and is *prima facie* liable therefor.''

In the *McCarthy* case (175 Pac. 940) the Supreme Court of Oklahoma held that where a State bank is

reincorporated as a national bank under a new name, and the personnel, management and business remain the same, the new bank is liable for usury charged and collected by the old bank. The court there said: "Nor can the bank escape liability because it changed its name from Tulsa State Bank to the Liberty National Bank, and abandoned its state charter and continued business under a federal charter. The uncontradicted evidence is that it was composed of the same individuals, same officers, same management, and continuing the same business at the same place. The law seems to be well settled that, where a corporation is the mere incarnation of a prior corporation, the new corporation must answer for all the obligations of the old." And the same court held in the *Esau* case (176 Pac. 514) that where the officers of an existing corporation organize a new corporation, and the stock in the new corporation is exchanged for stock in the old without the payment of any other consideration therefor, and the officers of the old become the officers of the new corporation, which continues to transact business in the same place as the old, and the new acquires all the property and assets of the old corporation, that such transaction does not amount to a sale but a merger of the two corporations.

Under the undisputed facts as disclosed by the evidence, and under the law, we are of opinion that the new corporation is liable to the plaintiff in the instant case. We are further of opinion that the contention of defendant that "plaintiff did not plead its theory that the defendant corporation, in legal effect, was a mere continuation of the Garfield Park Hospital, Inc., obligor upon the bonds, and, therefore, was not entitled to recover upon that theory" cannot be sustained. Plaintiff alleged that the new corporation was organized to continue the business of the old corporation and to succeed to all the property and business and

to assume all the outstanding debts and liabilities of the old corporation. We think this allegation was clearly sufficient to inform defendant of the nature of plaintiff's claim and that defendant was in no way taken by surprise, and this is a sufficient pleading under the rules of pleading applicable to the municipal court of Chicago. *Anderson v. Biesman & Carrick Co.*, 287 Ill. App. 507.

We are also of opinion that the action cannot be maintained on the theory asserted by plaintiff—that the sale or transfer of the personal property by the old to the new corporation falls within the provision of the Bulk Sales Act (pars. 78 to 80a, ch. 121½, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 121.01–121.04]), and that plaintiff can sue the new corporation. We think that plaintiff cannot, under the act, maintain a suit directly against defendant because section 4 of the Act which gave such right was not effective until July, 1933, which was more than a year after the transfer of the assets from the old to the new hospital, and was not solely remedial.

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

McSurely, P. J., and Matchett, J., concur.