Archie E. Chapman, Appellee, v. Illinois Midwest Joint Stock Land Bank of Edwardsville, Appellant.

Opinion filed November 8, 1939.

WHEATLEY & COMBE, of Harrisburg, and SIMPSON, REED & BURROUGHS, of Edwardsville, for appellant.

LYNNDON M. HANCOCK, of Harrisburg, for appellee.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

Appellant, Illinois Midwest Joint Stock Land Bank of Edwardsville, Illinois, a corporation, hereinafter called defendant, appealed from a judgment entered against it for $450 and costs, in favor of Archie E. Chapman, hereinafter called plaintiff.

The original complaint of plaintiff charged that defendant, through its duly authorized agent, engaged plaintiff, a real estate broker, to secure a purchaser of certain real estate for a named price, and agreed to pay therefor, and that plaintiff procured such purchaser, who was ready, willing, and able to purchase the property, but that defendant refused payment. The case was tried before the court, without a jury, and after plaintiff's testimony had been submitted he filed five additional counts pursuant to leave of court. The first three of such counts repeated the original allegations in the complaint, but omitted the words "through and by its duly authorized agent." The seventh count alleges a contract between purchaser and defendant, through plaintiff and defendant's agent, which contract was submitted to defendant and was approved, accepted, and ratified. The eighth count, in addition, avers the holding out of authority in the agent of defendant to make a contract for the sale of the real estate. The answer of the defendant denied all material allegations, but admitted authority in its agent, W. O. Stacy, to receive offers for purchase, which were to be submitted to the defendant for approval.

The evidence submitted by the parties shows that the defendant owned a farm, as to which W. O. Stacy supervised the renting, and as to which he was authorized to contact brokers and prospective purchasers and discuss terms of sale with them. The evidence submitted on behalf of defendant indicates that Stacy had authority only to receive offers and agreements, which were to be submitted to defendant for approval or rejection. Some evidence was introduced on behalf of the plaintiff indicating that Stacy had contacted other brokers and made arrangements for sales, and the defendant had referred to Stacy as its "field-man" and "authorized agent."

It was shown that on August 6, 1937 Stacy talked to one Eugene Choisser about the farm, and Choisser said

he knew a party who might be interested in buying and inquired whether he could get a commission if the sale was made. Choisser was not licensed as a real estate broker and was told by Stacy that he could not receive a commission for the sale. It was suggested that he get a licensed real estate broker to handle the matter for him. Choisser then got plaintiff, who in turn brought Ray Roll, the prospective purchaser, and they met with Stacy, and a contract for deed was prepared. The contract for deed was signed by said Ray Roll, but was not signed by the Bank, or by Stacy at such time. Prior to bringing Roll to such conference plaintiff stated that Stacy, after stating that the defendant would not pay 5 per cent commission on the farm, finally agreed on 5 per cent if the farm was sold at the price specified in the agreement as finally drafted. Choisser testified that both he and Roll understood that the contract was to be submitted to the defendant Bank for approval before it became binding, but plaintiff testified that he did not understand that that was required. The only service performed by plaintiff consisted of his procuring Roll, and attending the meeting at which the contract for deed was signed by Roll and taken by Stacy for presentation to the defendant Bank.

After the signature to such contract for deed, Stacy took it to the Bank, together with Roll's check for $700, but on the same morning on which he appeared at the Bank, the Bank received a letter from Roll asking for return of the check, and stating that he found it was impossible to buy the farm. Thereupon Roll's check, and the instrument which he had signed, were turned over to Stacy on the same day, with instructions to return them to Roll. The check was not cashed, and the proposed contract was not signed, nor, apparently, was it ever submitted to the board or executive committee of the defendant Bank for approval. Within a few days after he wrote the letter requesting withdrawal of his check and of the proposed contract, Roll called the

president of the defendant Bank over the telephone and his version of the conversation is that the president told him that the deal would be approved. The president of the defendant Bank states that in such conversation he definitely advised Roll that the contract was canceled and couldn't be considered. On the same day, Roll wrote a letter to defendant, addressed to the president of the Bank, stating that confirming his telephone conversation on that day he would ''like for my contract'' to ''go through,'' and concluded, ''would appreciate it if you would contact Mr. Stacy for the contract of this property and submit it to the Executive Committee for approval.'' Roll likewise testified that he thereafter received a telegram, the copy of which he did not retain, which he showed to the plaintiff, and which he stated was from the defendant Bank, and indicated that the ''deal was approved.'' The plaintiff testified that he did not recall who signed the telegram, but that it said the Bank had ''accepted his proposal, or something like that.'' It was denied on behalf of the defendant Bank that any such telegram was ever transmitted. There was evidence to the effect that thereafter Stacy had some conferences with Roll in connection with the making of a deal as to the property involved on the basis of modification or elimination of the broker's commission, and the evidence shows that Stacy delivered the contract and check back to Roll, and that such check was torn up in Stacy's presence. The sale was never consummated.

The evidence shows that Stacy had no authority in fact from the defendant Bank to approve sales, or to authorize employment of brokers so as to bind the defendant Bank.

The evidence introduced on behalf of the plaintiff in an attempt to show apparent authority on the part of Stacy to consummate agreements with the brokers, tended to confirm the testimony of defendant to the effect that Stacy had no such authority, but merely had

authority to contact brokers and prospective purchasers and submit agreements to the defendant Bank for its approval. An examination of the record fails to show any satisfactory evidence of any agency, express or implied, in Stacy, other than to procure offers from prospective purchasers or brokers, and submit them to the Bank.

Authority to solicit offers to purchase does not imply authority in such solicitor to employ a broker (*Doggett v. Greene*, 254 Ill. 134; *Willoughby v. Brown*, 190 Ill. App. 51). There being no express authority in Stacy to employ the plaintiff, and no evidence that the plaintiff was employed directly by the defendant Bank in any other manner, the material question raised on the appeal is whether there is sufficient evidence of ratification, approval, or acceptance of the contract, or employment of the plaintiff, so as to sustain the judgment entered in favor of the plaintiff as against the defendant.

A real estate broker is entitled to his commissions when he has furnished a purchaser, with whom the principal enters into a valid contract (*Wilson v. Mason*, 158 Ill. 304), and this is true though the actual transfer of the property is never made (*Fox v. Ryan*, 240 Ill. 391.

It is likewise true if one or both parties to the contract refused to comply with the contract (*Jenkins v. Hollingsworth*, 83 Ill. App. 139; *Friestedt v. Dietrich*, 84 Ill. App. 604). But where there is no complete contract of sale unless the seller approves the offer, no commission is required to be paid until such approval is shown (*Orner v. Liner*, 238 Ill. App. 348). Under such circumstances the burden is on the plaintiff broker suing for commissions, to show that he actually brought about a consummation of a sale, or was prevented from doing so by the owner (*Jackson v. Kohler*, 289 Ill. 444).

In the instant case there is no evidence which shows any ratification, or acceptance, or approval, of the con-

tract in which plaintiff alleges his activity in procuring, other than that disclosed by the prospective purchaser Roll and the plaintiff, in their reference to a telegram which they testified that Roll received from the Bank, and possibly the telephone conversation to which Roll testified. Defendant Bank objected to testimony with reference to such telegram on the ground that no proper foundation was laid. While specific objections are raised on the appeal, such general objection which was interposed at the trial failed to apprise the court of the particular points upon which defendant based its objection (*Wyman v. City of Chicago*, 254 Ill. 202). The same considerations apply to the telephone conversation as to which the parties testified. We are, therefore, giving consideration to the testimony with reference to the telegram, as well as with reference to the telephone conversation.

On a consideration of all the evidence in the record, and considering the testimony in the light most favorable to the plaintiff, this court must conclude that the evidence fails to show that plaintiff has established a right to recover as against the defendant Bank for services performed by the plaintiff. There is no specific evidence in the record that the defendant Bank at any time approved or authorized the employment of the plaintiff, or the payment of a commission to the plaintiff. The evidence in the record is directly to the contrary. The sale was never consummated, and the only evidence in the record which in any manner indicates that anything in the nature of a complete, valid agreement as between the parties, ever existed, arises either from the telephone conversation referred to, or from the telegram as to which Roll and the plaintiff testified.

As to the telephone conversation, the letter of the purchaser which followed it, in which he makes reference to the fact that he desires that his contract be submitted to the executive committee for approval, indi-

cates that nothing transpired in such conversation which constituted a ratification or approval.

As to the telegram, the defendant Bank flatly denies that any such telegram was ever transmitted. The evidence on behalf of the plaintiff with reference to such telegram, and the contents thereof, is vague, and it is not satisfactorily established by such evidence that anything was ratified which could thereby entitle plaintiff to a recovery of commission by virtue of having furnished defendant with a purchaser with whom the defendant entered into a valid contract. Perhaps on a retrial of this matter, the mystery of such telegram, or its contents, or other evidence which will clarify the issues thus raised, may be presented.

Under the circumstances, this court hesitates to make a finding of fact in this case, and feels that substantial justice will be done here if this case is remanded for trial and a full opportunity is afforded both plaintiff and defendant to present such evidence as may be pertinent to the issues in this cause. This cause is, therefore, reversed and remanded to the circuit court of Saline county, Illinois.

*Reversed and remanded.*