Plaza Express Co., Inc., a Corporation, Plaintiff-Appellee, v. Middle States Motor Freight, Inc., a Corporation, Defendant-Appellant.

Gen. No. 48,700.

First District, Second Division.

February 21, 1963.

118

Hubbard, Hubbard, O'Brien & Hall, of Chicago, for appellant.

Carl B. Aplon and John M. Nagle, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

Plaintiff brought suit to recover damage to the wall of a garage it leased at 1000 West 21st Street in Chicago, during the years 1946 and 1947. The evidence shows that Ralph Kinnear, d/b/a Middle States Motor Freight, moved into the property adjoining plaintiff's and began the practice of parking its trucks against the wall of plaintiff's terminal-garage. The rear of these trucks frequently struck this wall as they were being "backed" into position, with the result that, during a period beginning approximately in March of 1946 and ending in June of 1947, the wall became progressively weaker and had to be replaced. Under the terms of its lease, plaintiff was required to maintain the premises in good condition. Accordingly, in June of 1947 plaintiff had the wall replaced at a cost of $4,500, the lowest of three bids on the job, and subsequently brought this action to recover for the damages sustained. Judgment was entered on the jury's verdict of $4,500. Defendant appeals from the

judgment and the denial of its post-trial motions, made in the alternative.

■ ■ At the outset, it is perhaps well to indicate that the evidence clearly justified the jury in finding that the damage to plaintiff's wall was caused by trucks belonging to Middle States and its business patrons. The testimony of witnesses to the damage, as well as photographs of the damaged wall, substantiate this conclusion. In addition, there is evidence that in 1946 Middle States' terminal manager had the roof of plaintiff's terminal shored up, pursuant to repeated complaints that Middle States was knocking down the wall and causing the roof it supported to sag. This conduct constituted an admission on the part of Middle States that it was liable for the damage to plaintiff's terminal, and was admissible as evidence of such liability.

In June of 1947, after the damage complained of had ceased and some time before the filing of this action, Ralph Kinnear, d/b/a Middle States Motor Freight, incorporated as Middle States Motor Freight, Inc. In its motion for a directed verdict and post-trial motion, defendant corporation claimed that plaintiff has failed to prove that defendant assumed the liability of Middle States Motor Freight for the damage to plaintiff's wall. In support of this contention, defendant relies upon Chicago Smelting & Refining Corp. v. Sullivan, 252 Ill App 259 (1929), modifying 246 Ill App 538 (1927), which held that a corporation formed to take over the business of a partnership did not assume those notes of the partnership which were payable to the defendant, cross-claimant. When a statement of the assets and liabilities taken over from the partnership was shown to have specifically enumerated some notes of the partnership but not those in question, the court said (pp 261–262):

120

"The corporation having assumed to pay certain specified notes of the partnership as a part of the consideration of the partnership assets, under the evidence here shown cannot be held liable for any other notes of the partnership."

■ Defendant argues that the case at bar comes within the foregoing rule, since the journal entry of July 1, 1947 assumes the liabilities of Middle States Motor Freight but does not enumerate the potential liability to plaintiff as one of the liabilities assumed. To state this proposition is to refute it. The journal entry in question was filed before the Interstate Commerce Commission as part of defendant's application for a license to engage in trucking. It established the general ledger of the corporation, listing the assets taken over from Middle States Motor Freight, together with the liabilities assumed, and showing the capital stock subscribed for the excess of the assets received over liabilities assumed. At the time this journal entry was made, the present suit had not been filed and any liability was therefore speculative, at least as to amount. This being so, the failure of the corporation to include this uncertain claim in its opening journal entry is stripped of any implication that the corporation meant thereby to dissaffirm this liability, since it is most unlikely that a potential claim of uncertain amount would be given balance sheet recognition before entry of judgment on that claim. Failure to list this liability does not amount to a disaffirmance within the meaning of the Smelting decision.

■ Although the record fails to show that the defendant explicitly assumed the liability of Ralph Kinnear to the defendant, we think that an implied assumption of this obligation has been shown. As revealed by the opening journal entry of July 1, 1947, the depreciable assets of Ralph Kinnear were apparent-

ly placed on the books of the corporation at their existing book values, since the existing accumulated allowances for depreciation of those assets were carried over to the corporate accounts. This practice suggests merely a formalized transfer of existing account balances from one set of books to another, not the establishment of current asset values through the medium of a bona fide sale. It further appears from this journal entry that all of defendant's stock was to be issued in exchange for the net assets received from Ralph Kinnear. In the absence of proof to the contrary, we assume that Ralph Kinnear, who relinquished the assets, received the stock in return therefor. Further evidence that defendant's incorporation amounted to little more than Kinnear's "putting on a new coat" is to be had from defendant's terminal manager Gellatley, who testified that after incorporation the personnel remained the same and that the Chicago terminal remained the same.

The decision in Acorn Lumber Co. v. Friedlander Box Co., 240 Ill App 425 (1926) is in point. There the court held that where an individual proprietor transferred to a corporation all of the assets of his business in exchange for a majority of the stock of the corporation so formed, the corporation would be held to have assumed the liabilities of the proprietorship. The court indicated further at pages 430–431 that this rule applies "whether the business was originally conducted by an individual or a corporation which individual or corporation afterwards turned over all of his or its assets to a new corporation, nothing being paid but stock in the new corporation." In Greengard v. Katz, 270 Ill App 227 (1933), the court held that the defense of usury was available to a corporation formed to take over the business and liabilities of a partnership. At page 235 it is said:

122

"The undisputed evidence is that the Katzes and Einhorns agreed among themselves to incorporate for the purpose of continuing the business of conducting the garage, and the assets of the business were transferred to the corporation, each of the persons receiving his or her aliquot part of the capital stock of the business which was transferred to the corporation. As we said in Chicago Smelting & Refining Corp v. Sullivan, 246 Ill App 538, quoting from Andres v. Morgan, 62 Ohio St 236: 'The members of the partnership may be said to have simply put on a new coat.' See also Acorn Lumber Co. v. Friedlander Box Co., 240 Ill App 425."

This doctrine is well established in Illinois, as appears from the following cases: Interstate Finance Corp. v. Commercial Jewelry Co., 280 Ill 116, 117 NE 440 (1917), affg 201 Ill App 568 (1916); Kraft v. Garfield Park Community Hospital, 296 Ill App 613, 16 NE2d 936 (1938); and Lemars Shoe Co. v. Lemars Shoe Mfg. Co., 89 Ill App 245 (1899).

We have found no Illinois authority which discusses the issue of whether a corporation, liable for the trade debts of its predecessor in accordance with the foregoing cases, can also be held to have assumed the tort liability of its predecessor, but can see no reason why this type of liability, like any other, may not be impliedly assumed, and there are authorities in other states which hold that it may. Wolff v. Shreveport Gas, Elec. Light & Power Co., 138 La 743, 70 So 789 (1916), held that where one corporation, liable in tort to third parties, conveys property to a new corporation which is a mere continuation of the old, the injured parties can recover against either corporation. After indicating that the successor corporation would be free of tort liability if it had been a bona fide pur-

chaser of the old corporation, the court went on to say at 70 So 789, 795:

> "Where the purchaser is a new corporation, composed of the same shareholders as the old, the transaction, in no manner, affects the rights of the creditors of the old corporation, who may proceed for the recovery of the amounts due them against either corporation, or both; and that, *whether the claims be founded in contract or tort,* since the real debtor, though represented by two corporations instead of one, remains the same, in contemplation of law." (Emphasis added.)

In a similar vein, Barnes v. Liebig, 146 Fla 219, 1 So2d 247 (1941), holds that a tort is a liability within the meaning of the rule which makes the "absorbing" corporation in a merger responsible for the liabilities of the "absorbed" corporation. 13 Am Jur § 1253, states at page 1137 that "an agreement to assume liabilities of a predecessor [corporation] includes tort liabilities."

More recently, Jones v. Eppler, 266 P2d 451 (Okla 1953) squarely holds that a tort may be impliedly assumed within the meaning of the above discussed rules. On the facts of a case similar to ours, the court held at page 458:

> "A tort Liability of an individual, partnership or corporation is an indebtedness which may be enforced against a corporation which takes over the business and assets of its predecessor under the circumstances outlined above, as the assumption of the liabilities of a predecessor includes tort liabilities."

■ We believe that the reasoning of the foregoing cases is sound, and that liability founded on a tort, like any other liability, may be impliedly assumed by a new corporation which represents only a "new coat"

124

for its old owners. Accordingly, we hold that defendant's motion for a directed verdict was properly denied.

■ Defendant makes several assignments of error in the trial court's admission of evidence. These contentions are without substantial merit, and will be only briefly discussed.

It is urged that the trial court committed reversible error through the admission of hearsay evidence in the testimony of the witness Gellatley. The only specification of error in defendant's post-trial motion which comes close to preserving this objection is #7, which states in non-particularized form that the court erred in admitting hearsay evidence. In a trial transcript 300 pages in length in which such objections were frequent, this is hardly a sufficiently detailed specification of error to permit the court to rule properly upon it, and therefore will not be considered. Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 164 NE2d 209 (1960).

■ Defendant next objects to the introduction into evidence of a letter to plaintiff from A. Marcus, submitting a bid of $5,100 for the replacement of the damaged wall. At trial, defendant objected to the letter on the grounds that it was not material to the issues in the cause; the court held the letter to be material to the reasonableness of the $4,500 paid for repairs, and admitted the letter into evidence. Defendant now contends that this letter should have been excluded as hearsay. It is axiomatic that a specific objection to evidence is a waiver of all points not specified, and that a party will not be permitted to raise objections on review which were not urged in the trial court. Town of Cicero v. Industrial Commission, 404 Ill 487, 89 NE2d 354 (1950).

■ Next, defendant objects to the admission into evidence of the repair bill sent to plaintiff by the contractors who repaired the wall, and also objects

to the admission into evidence of the check sent by plaintiff to this contractor in payment of the aforementioned bill. At trial, defendant objected to these items of evidence on the grounds that no proper foundation had been laid for these exhibits. On appeal, defendant asserts that both the bill and the check were identified by an employee of the plaintiff who admitted not having seen them before. It has been held that an objection to evidence that "no proper foundation has been laid" for the evidence is a general objection, and that specific objections will not be considered on a subsequent appeal. Wyman v. City of Chicago, 254 Ill 202, 98 NE 266 (1912); Chapman v. Illinois Midwest Joint Stock Land Bank of Edwardsville, 302 Ill App 282, 23 NE2d 744 (1939). In any event, defendant's contention on appeal is without substantive merit, since after the identification complained of, both the check and the bill were positively identified by an employee of the contractor who did the repair work.

Lastly, defendant asserts that plaintiff's instruction #1 was prejudicial in that it relieved plaintiff of the burden of proving that defendant assumed the liabilities of Ralph Kinnear. This contention is without merit. Defendant's instruction #12 specifically informed the jury that the burden was on the plaintiff to show that defendant had assumed responsibility for the acts alleged.

To have discussed in this opinion the many scantily articulated assertions in defendant's brief would have extended this opinion beyond all reasonable length. We find no reversible error in the proceedings in the trial court. The judgment is therefore affirmed.

Judgment affirmed.

BRYANT, P. J., concurs.

126

BURKE, J., dissenting:

Any damage to the wall was done in the spring of 1946. On March 12, 1947, defendant was incorporated in Ohio, to do a trucking business. On July 1, 1947, with the approval of the Interstate Commerce Commission, defendant acquired the trucking business of Ralph E. Kinnear and assumed certain debts of Kinnear. The defendant did not assume any tort liability of Kinnear. The principal office of the corporation is in Cincinnati, Ohio and there is a branch office in Chicago. It is clear that the defendant is not liable for a tort committed by Kinnear a year before it was incorporated. The burden was on plaintiff to prove that the corporation assumed the tort liability of Kinnear. It made no attempt to do this. The record shows that, on the contrary, there was no assumption of tort liability. See Herndon v. Germania Mutual Savings Society, 146 Ill App 401; Chicago Smelting & Refining Corp. v. Sullivan, 252 Ill App 259, 261–2; Lawrence v. Nyberg Automobile Works, 162 Ill App 348, 352; Western Screw & Mfg. Co. v. Cousley, 72 Ill 531; Safety Deposit Life Ins. Co. v. Smith, 65 Ill 309; Knass v. Madison & Kedzie State Bank, 269 Ill App 588, 610; Alexander v. State Sav. Bank & Trust Co., 281 Ill App 88, 96.

Defendant's acquisition of the trucking franchise had to be approved by the Interstate Commerce Commission. The Commission's approval of the sale to defendant was made upon application showing specifically the obligations defendant assumed. It is doubtful whether the Commission would have approved the transfer had there been an assumption of unliquidated claims for tort. The prior owner, Kinnear, was not an incorporator. The record is silent as to stock ownership in the corporation. Plaintiff's remedy was an action against Kinnear, the alleged tort feasor. Should plaintiff obtain a judgment against Kinnear, an execu-

tion would issue in due course. The record is silent as to the financial standing of Kinnear. Assuming that he owns a substantial number of shares of defendant corporation, these shares and thus Kinnear's interest in the corporation could be sold to satisfy the judgment. Section 73 of the Civil Practice Act and other provisions afford adequate steps by which a judgment creditor may reach assets and credits of a judgment debtor. There is no basis in our law and the facts of the case on which to sustain the judgment.

I am of the opinion that other errors were committed in the trial of the case. The testimony of plaintiff's witness Gerstein recounting conversations with the terminal manager of Kinnear a year before the incorporation was not admissible against the corporation. The testimony of the witness, Gellatley, should be disregarded. The transaction whereby the corporation took over the business was effected in Cincinnati. This witness had no knowledge of the transaction.

The giving of plaintiff's instruction #1, constitutes prejudicial error. This instruction relieved plaintiff from proving that the defendant assumed the alleged liability of Kinnear for damage to the wall. This instruction seeks to inform the jury of the issues presented by the pleadings, but omits the most important issue. I think the judgment should be reversed and the cause remanded with directions to enter a judgment against plaintiff.